GARBIS *v.* APATOFF ET UX.

[No. 51, October Term, 1948.]

14

*Decided January 12, 1949.*

The cause was argued before. MARBURY, C. J., DELA-
PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*M. Richard Moss* for the appellant.

*Albert H. Frankel* and *Henry J. Frankel* for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

Meyer Garbis, a building contractor, trading as Globe Home Improvement Company, instituted this suit in the Superior Court of Baltimore City against Norman L. Apatoff and his wife to recover for labor and materials furnished under a written contract to make alterations to their dwelling at 2521 Liberty Heights Avenue.

Under the contract executed June 25, 1946, plaintiff agreed to complete the work on or before August 1 for $3,200. One of the principal defects of the house was a hump in the floor in the living room and the dining room. Plaintiff agreed to try to lower the posts under the dining room and to shorten the studding in the basement partition under the living room. In the specifications he commented: "This should lower the floor to some extent, possibly level out to where floor belongs, but not completely." Defendants made an advance payment of $200 upon the execution of the contract, and agreed to make further payments of $750 when the work was commenced, $750 when the work was half completed, $750 when the work was three-fourths completed, and $750 upon completion of the work.

Defendants, however, refused to pay the final installment of $750 on the ground that plaintiff had not performed the contract properly and completely. On November 14, 1946, they wrote plaintiff a letter complaining that seven items in the specifications had not been performed and that the paint had peeled off the front porch. Shortly afterwards defendants noticed some cracks in the wall, and they complained to plaintiff, who went to the house with Louis De Cou, an assistant, to make an inspection. De Cou said that he was unable to assign any cause for the cracks other than settlement of the house or vibration of the street cars. Plaintiff

accordingly took the position that he was in no way responsible for the damage. In March, 1947, defendants consulted another contractor, Larry Ginsberg, trading as Gaines Home Improvement Company, who gave an estimate that the cost of remedying the damage would be about $830. It was not until February, 1948, that Ginsberg undertook the work. After performing the work he rendered defendants a bill for $1,050.

Defendants filed a counterclaim against plaintiff to recover for damages alleged to have been caused by plaintiff's negligent workmanship. They based their counterclaim mainly on the way in which plaintiff tried to remove the hump in the first floor. They produced testimony to show that plaintiff had chopped out some of the joists, the only support for the first floor and the partition walls resting thereon; and that in the fall of 1946 the east wall of the living and dining rooms, having no support, began to crack. Eventually the cracks ran all along the wall from the front to the rear of the house. In some places they were two inches wide. Plaintiff disputed that the damage was caused by his negligence. He advanced the theory that the house, which was built more than 25 years ago, stands on defective ground, and that settling of the walls had caused them to crack. The trial judge decided that the cutting of the joists had caused the damage, and had made it necessary to hire another contractor. The judge considered $1,050 as a reasonable amount for the cost of remedying the damage, and from that sum he deducted $594, representing the final installment due under the contract less credits allowed defendants for work undone, and thereupon entered judgment in favor of defendants for $456. From that judgment plaintiff took this appeal.

Plaintiff's primary contention is that the evidence was insufficient to prove that his work was the proximate cause of the damage alleged. He urged that the defective ground was causing the house to settle, and this condition was an independent factor which was the superseding cause of the damage. The general rule is firmly estab-

lished that damages cannot be recovered for a negligent act unless it is the direct and continuing cause of the injury without the intervention of any independent factor. *Holler v. Lowery,* 175 Md. 149, 200 A. 353; *Parsons v. Chesapeake & Potomac Telephone Co.,* 181 Md. 502, 505, 30 A. 2d 788. The difficulty often comes in the application of the rule. However, as we said in *Mullan v. Hacker,* 187 Md. 261, 49 A. 2d 640, the trial court in an action for damages should not indulge in subtleties as to causation that might defeat the ends of justice. When two or more independent causes concur in producing an effect, and it is impossible to determine judicially which was the controlling and efficient cause, or whether the event would have happened at all without the concurrence of both, and a particular party is responsible for only the consequences of one of such causes, the plaintiff cannot recover. But a tortfeasor is not allowed to apportion his own wrong, and hence if injury occurs while his wrongful act is in operation, he cannot make the defense that there was a more immediate cause of the loss, if that cause was put into operation by his act; but, in order to be free from liability, he must show that the same loss would have happened if the negligent act had not been done.

We recognize that the active operation of an intervening force, which is a force which actively operates in producing injury to another after the actor's negligent act has been committed, may be a superseding cause which relieves the actor from all liability for another's injury occurring thereafter. But, as pointed out by the American Law Institute, the extraordinary operation of a force of nature, which merely increases or accelerates injury to another which would otherwise have resulted from the actor's negligent conduct, does not prevent the actor from being liable for such injury. In other words, if the actor's conduct is negligent because it involves a risk of a particular sort of injury to others, the fact that an operation of a natural force causes injury of such a sort to occur earlier or to be greater in extent than that which

would have occurred but for its intervention does not relieve the actor from responsibility for the injury which actually results from his negligence, if it is substantially impossible to separate the injury which has been done from that which would have occurred without the intervention of the force of nature. *2 Restatement, Torts,* secs. 441, 450.

We consider the evidence in the case before us amply sufficient to justify the finding that plaintiff's work was performed improperly and negligently and was the proximate cause of the damage. Two reputable Baltimore contractors testified in the court below that plaintiff, in trying to reduce the hump in the floors, committed acts which were not only unconventional and improper, but liable to cause severe property damage, and even imperil the lives of the occupants. Ginsberg, who had more than 16 years of experience as a contractor, testified that when he inspected the house in March, 1947, he found that the plaster on the walls and ceilings throughout the house had cracked, and the floor had buckled at the entrance of the living room to the dining room. On making an examination of the basement, he found that the house had settled on the west side, and on closer examination discovered that there had been six or seven joists which had been cut haphazardly where they were intended to rest on the main beam, which runs the entire length of the house, and these joists were "just hanging in mid-air." The contractor immediately reached the conclusion that the cutting of the joists had weakened the partition walls on the first and second floors. He recommended that the joists which had been cut should be wedged and raised so that the partitions would receive proper support. He declared that the cutting of the joists was not only sufficient to cause the floors to sag and the walls to crack, but also to warrant the building inspector to condemn the building.

Vaughn Bybee, Ginsberg's employee, testified that he inspected the basement in February, 1948, and found that the joists had been cut away "in a very indiscrim-

inate manner." Some of the joists, he explained, had not been cut, while others were giving no support whatever to the walls between the first and second floors. He supposed that the settling of the foundation and walls had been the original cause of the hump in the floor, but he stated that the workmen had tried to correct the trouble by cutting the joists, and in so doing they made the condition worse, rather than better. He stated definitely that building contractors do not consider it proper to cut joists for the purpose of reducing a hump in a floor. In fact, he said, it is "contrary to all building ethics."

Plaintiff also contends that, even if his work was not satisfactory, defendants saw its progress and made no objection to it, and their silence should be held as an acceptance of the work and a waiver of any defects. We cannot accept this contention. It is true that Apatoff admitted that he happened to be at the house when one of plaintiff's carpenters was in the basement cutting pieces of wood from the joists with a hatchet and saw. But he maintained that, not being a carpenter, he did not understand the nature of the work, and he did not observe whether the joists were cut away from the beam. We reaffirm the rule that the mere fact that an owner of a building takes possession of it after it has been erected or repaired does not in itself constitute an acceptance of the contractor's workmanship. *Hammaker v. Schleigh,* 157 Md. 652, 666, 147 A. 790, 65 A. L. R. 1285. Nor is the failure of an owner to take charge of the prosecution of the work, when he finds that the contractor is not complying strictly with the conditions of the contract, a waiver of his right to damages for defective work. In the instant case there is no basis for the contention that defendants waived any defects in plaintiff's work. On the other hand, they were dissatisfied with various parts of his work. They refused to pay the final installment of $750 payable upon completion of the work, and in their letter of November 14, 1946, they stated: "The quality of work you have done does not

20

meet with the promises you made. * * * These are just a few of the complaints * * ."

Plaintiff finally contends that defendants were dilatory in correcting the damage. There is no question that where one party commits a breach of contract, it is the duty of the other party to make all reasonable efforts to minimize the loss sustained as a result of the breach. *Middendorf, Williams & Co. v. Alexander Milburn Co.*, 134 Md. 385, 395, 107 A. 7. In this case defendants consulted Ginsberg in March, 1947, to estimate the cost of correcting the damage, and he estimated that the cost would be about $830. Plaintiff makes the complaint that nearly a year later the cost was $220 more than the estimate. It is common knowledge that a contractor's estimate of the cost of a job is often considerably less than the actual amount of the bill. There is no evidence to show that the delay prejudiced plaintiff. We find nothing in the record to show that the cost of the work was excessive, or that it would have cost less if the work had been done sooner. Moreover, defendants explained that the cracks increased in size very slowly and gradually, and that they were lulled into the hope that the condition would eventually improve by De Cou's assurance that the floor would gradually settle in course of time.

We have, therefore, found nothing in the record to impel us to disturb the judgment entered in favor of defendants.

*Judgment affirmed, with costs.*