WALTER SMILEY ET AL. *v.* LILLIAN
ATKINSON, Administratrix of the
Estate of John C. Atkinson et al.

[No. 569, September Term, 1970.]

*Decided August 3, 1971.*

The cause was argued before ORTH, MOYLAN and POW-ERS, JJ.

*Robert B. Barnhouse,* with whom were *James P. Gillece, Jr.,* and *Piper & Marbury* on the brief, for appellants.

*Max R. Israelson,* with whom were *Joseph I. Pines* and *Israelson, Pines & Jackson* and *S. Michael Floam* on the brief, for appellees. *A. Gus Mastracci, Assistant City Solicitor,* and *Clayton A. Dietrich, Chief Assistant Solicitor,* with whom was *George L. Russell, Jr., City Solicitor of Baltimore City,* on the brief, for George Francis Gunzelman, one of the appellees.

POWERS, J., delivered the opinion of the Court.

This case involves procedural questions, the law of last clear chance, and $90,000.00.

John C. Atkinson filed suit in the Superior Court of Baltimore City claiming damages for injuries sustained in a motor vehicle accident. In a separate count, he and his wife, Lillian F. Atkinson, jointly claimed compensation for damage to their conjugal relationship. They named as defendants, Walter Smiley and his employer, Continental Can Company, Inc. Those defendants filed a third party claim against George Francis Gunzelman, and the Atkinsons later amended their declaration to claim directly against Gunzelman. Gunzelman filed a crossclaim against the original defendants.

Shortly before 11:00 A.M. on May 31, 1967 Atkinson, an employee of the City of Baltimore, was working on an elevator-platform, mounted on a city work truck, performing maintenance work on overhead traffic lights. The truck, painted yellow and equipped with yellow flashing lights, was standing in the middle of the east-

bound lanes of Pulaski Highway, Route 40, a divided highway, which had three eastbound lanes. After he had worked on the traffic signal to the right of the truck for several minutes, Atkinson operated the controls and swung the platform to the other side, so that it extended a foot or a foot and a half, according to his testimony, into the lane to the left. Each lane was said to be 12 feet wide.

Atkinson said he had worked on the light to his left for about three minutes, and traffic, including tractor-trailers, was passing both to the right and to the left. The position of the truck and the elevated platform was such that Atkinson was facing east, with his back to traffic approaching on the adjacent lanes, while he was working on the light.

Appellant Walter Smiley was operating a tractor-trailer for appellant Continental Can Company, Inc. in the left eastbound lane. His trailer hit the platform and caused injuries to Atkinson. Appellee Gunzelman, foreman of the crew working with the truck, testified that Smiley said at the scene that he "saw the truck as he approached and thought he could clear it". The investigating officer testified that Smiley gave him a statement saying that he saw the platform and misjudged the height of it. Smiley testified that when he was at North Point Road, over 1,000 feet away, he saw the truck, and saw that the platform extended slightly over his lane.

From the time the suit was filed on April 10, 1968, extensive discovery was undertaken by all parties. By agreement in early March 1970, trial was scheduled for May 4, 1970. Trial actually began on May 5th before Judge William J. O'Donnell and a jury, and was concluded by verdicts of the jury on May 13th. The verdicts were for Atkinson for $75,000.00 and for Mr. and Mrs. Atkinson jointly for $25,000.00, both against Smiley and Continental Can. A verdict was returned in favor of the defendant Gunzelman. The crossclaim he had filed against Smiley and Continental Can had been dismissed before submission of the case to the jury.

After argument and disposition of a motion for judgment n.o.v. or for a new trial, judgments were entered on those verdicts, but the joint judgment was remitted to $15,000.00. Smiley and Continental Can appealed from the judgments.

### Procedural Developments and Pretrial Appeal

On May 4, 1970 appellants filed a motion for physical examinations of the plaintiff, and a motion for continuance. The motion for physical examinations was presented to Judge Prendergast, and the motion for continuance came before Judge Howard. Commencement of the scheduled trial was held in abeyance until the following day.

The next morning Judge Prendergast filed a letter addressed to counsel, explaining the issues presented by, and his conclusion to deny the motion for physical examinations. The complete letter follows:

"Gentlemen:

By agreement of counsel, this case was specially set for trial on May 4, 1970. On that date counsel for defendants submitted a lengthy series of motions and proffered orders designed to postpone the trial in order to afford him the opportunity to have two additional medical examinations of plaintiff. One of these examinations would be made by Dr. Packard, the orthopedist who had previously examined plaintiff for defendants at defendants' request, while the second examination would be by a Dr. Sidney Scherlis, a cardiologist. These pleadings were submitted to me at 9:50 A.M. yesterday, the morning of the scheduled trial date, and I was obligated to be on the bench at 10 o'clock to try the usual heavy criminal assignment for the day. Time did not permit an intelligent analysis of the problems, so I studied the file in detail at home last evening.

Meanwhile, Judge Howard, who is in charge

of all disputes involving assignment of cases, wisely allowed the additional day to resolve this question of discovery law.

The request of defense counsel for the examination by a cardiologist is reasonable enough but it comes too late. It is clear that under Maryland Rule 526 no trial may be postponed or delayed by reason of incompletion of discovery proceedings under Chapter 400 after a case has been assigned a trial date. Accordingly, this court cannot sign the proffered motions submitted by defense counsel and, assuming that Judge Howard concurs, the trial shall proceed forthwith.

Mr. Barnhouse complains that he is caught by surprise as the result of plaintiff's claim that his heart condition was precipitated or aggravated by the accident in suit. The record does not support that. As early as January 10, 1969, plaintiff's answers to interrogatories revealed that among the injuries claimed were "shock to cardio vascular system" and it was revealed that plaintiff had a past history of heart trouble. In his deposition, it is said that plaintiff testified that his heart condition was brought on by the accident. Some weeks ago plaintiff's counsel, by letter, informed Mr. Barnhouse that a Dr. Vollmer would testify that the heart condition was caused or aggravated by the trauma. From this it follows that defense counsel had ample time to have the examination made long ago and not after the scheduled trial date.

In any event, defendants may, if they so desire, have Dr. Scherlis or some other cardiologist attend the trial, listen to all the testimony, and then possibly give an opinion on the stand, provided that an appropriate amendment to answers to interrogatories is filed. Perhaps this could be done by agreement.

> At any rate, the court cannot sign the proffered motions and sees no reason why the trial should be delayed."

Judge Howard denied the motion for continuance, as reflected in docket entries made on May 4th and again on May 5th. This motion was part and parcel of the other and presumably was denied for the same reasons. Also on May 5th, Judge Howard overruled a demurrer which appellants had filed to Gunzelman's crossclaim against them. Their protest that they were denied their 15 days in which to plead to the crossclaim was mooted by its later dismissal.

If what we have already recited indicates that the morning of May 5th, before the jury was impanelled, was a busy time, it became even more busy. Appellants filed an order to the clerk to:

> "Enter an appeal to the Court of Appeals from the order of the Court dated May 5, 1970, denying the Motion for Physical Examinations of John C. Atkinson, Plaintiff, and from the order of the Court dated May 5, 1970, denying the Motion for Continuance filed by Walter Smiley and Continental Can Company, Inc., Defendants."

They then presented to Judge Wilson K. Barnes, of the Court of Appeals, a petition for stay of proceedings. Judge Barnes denied the petition. All counsel then conferred in chambers with Judge O'Donnell. The record of that conference shows that appellants made abundantly clear their contention that their filing of an order for appeal from the denial of their discovery motion and their motion for continuance absolutely divested the trial court of jurisdiction to proceed with the case, and that only the appellate court could determine whether the appeal was properly taken. Judge O'Donnell disagreed, and ordered that the trial proceed. It did.

Whatever vitality that purported appeal had was preserved by extensions of time within which to file the

record, and it comes to us in one record with the appeal from the final judgments.

A. Effect of the Appeal from Interlocutory Orders.

We have carefully studied the well briefed authorities dealing with the effect of the filing of the order for appeal upon the court's jurisdiction to proceed with the trial of this case. Most deal with the power of a lower court to conduct further proceedings after an appeal has been filed from a final order. A few deal with borderline questions of finality, and therefore appealability, of an order or decree. We find none which could support the contention that these interlocutory orders relating to discovery and continuance are immediately appealable. *Eastern States Corp. v. Eisler*, 181 Md. 526, 30 A. 2d 867, decided in 1943, cannot be extended beyond the particular facts it involved. The Court of Appeals there entertained an appeal from a discovery order in an equity case made while there was pending a demurrer which questioned the very jurisdiction of the court (the demurrer was later sustained) and did so not because the order was an abuse of discretion by the lower court, but because it was outside the scope of its discretion.

The orders here denying appellants' motions were clearly within the discretion of the lower court, and any abuse of that discretion is reviewable on appeal from the final judgments. See *Barnes v. Lednum*, 197 Md. 398, 79 A. 2d 520, where Judge Markell, for the Court of Appeals, said: "If every order granting or denying discovery is a final appealable order, it would seem that every ruling on evidence would be separately appealable". At page 405. True, the Court of Appeals entertained the appeal to the extent of dismissing it as not from an appealable order, but the power of the lower court to conduct further proceedings after the appeal was filed was not involved.

This Court has had occasion in two recent criminal cases to comment upon the precise question of whether a lower court loses jurisdiction to proceed with trial of a case by reason of the filing of an appeal from a non-

appealable order. *Raimondi v. State,* 8 Md. App. 468, 261 A. 2d 40, *Powers v. State,* 8 Md. App. 487, 261 A. 2d 44. In *Raimondi,* Chief Judge Murphy, after reviewing authorities, said for the Court, at page 476:

> "But we find nothing in these cases requiring us to hold that the lower court automatically loses jurisdiction to proceed with the trial of an accused simply upon the filing of an appeal from a pretrial ruling of the court which, under the cases, is recognized as an interlocutory order, not immediately reviewable on appeal as constituting a final judgment denying a constitutional right. See *Powers v. State, supra,* holding that the trial court was not divested of jurisdiction to try the accused when he appealed from the court's denial of his motion to dismiss the indictment because of alleged violations of his constitutional rights under the *Wade-Gilbert-Stovall* trilogy of cases. To hold otherwise would be to sanction that which the court in *Lee v. State, supra,* deemed so distinctly odius — the stopping of criminal trials by filing appeals from interlocutory orders. If the accused in a criminal case could deprive the trial judge of jurisdiction to try and determine his case by taking an appeal from a nonappealable interlocutory order, then he would be vested with the power to 'paralyze the administration of justice in the [courts] by the simple expedient of doing what the law does not allow him to do, *i.e.,* taking an appeal from an order which is not appealable.' * * * We hold then that in such circumstances the lower court is not, by reason of the filing of an appeal, divested of jurisdiction and need not stay further proceedings in the case."

Should a broader expression be required, we specifically hold that the rule we stated in *Raimondi* applies with equal force to civil cases. To apply any other rule would

be utterly unthinkable. Any party would then be able, at any time before final judgment, to bring the trial of a case to an abrupt halt by merely filing an order for appeal from any ruling of the court. Control of the judicial process would thus pass from the courts to the parties and their counsel. Mistrials and continuances would be available without limitation at the whim of any party. The trial court must have, and does have, the power to determine whether its jurisdiction to proceed has been ousted. Should any abuse of that power ever arise, such abuse could undoubtedly be corrected by prompt appellate action.

We decline to consider the order for appeal filed on May 5, 1970 as an appeal, requiring affirmance, reversal, remand, or even dismissal. It is before us, however, as an interlocutory aspect of a case on appeal from final judgments, and we hold that Judge O'Donnell's action in ignoring it was correct.

### B. Review of the Interlocutory Orders on Appeal from the Final Judgments

The rulings of Judge Prendergast and of Judge Howard on the motions are properly before us in the appeal from the final judgments. On the basis of what we have already said, we find no abuse of discretion in either ruling. The firm opposition of counsel to any delay of the trial was attributed to apprehension over Atkinson's health. The apprehension was not unfounded. Atkinson died 12 days after the trial. His widow, as administratrix, was duly substituted as a party in his place.

### Last Clear Chance

Appellants claim that the trial judge committed prejudicial error in his instructions, involving the doctrine of last clear chance. The instruction given was:

"If you find that Mr. Atkinson was negligent in not taking proper precautions for his own safety and permitted the platform on which he was working to intrude out into the driving lane and

at a height where it did constitute a hazard to passing vehicles, and you find that he was there working in that position, nonetheless, if you find that Mr. Smiley, in the operation of his tractor-trailer saw Mr. Atkinson in that position, and appreciated the position of peril in which Mr. Atkinson was and that he could have, by the use of due care, have avoided the accident, then the verdict will be in favor of Mr. Atkinson, even though he had placed himself in a position of peril, if you find that notwithstanding the negligence on his part, there was sequential negligence on the part of Mr. Smiley in failing to take reasonable steps to avoid colliding with the platform in the position in which it was."

Exception was duly noted. Counsel said, "* * * the first exception I would take is to that portion of Your Honor's charge where you discussed with the jury sequential negligence. I say, you did not use the words 'last clear chance'. It is essentially the last clear chance [doctrine]". Counsel gave as grounds that the instruction left out an element, and the jury should also be told that the doctrine would not apply if they found continuing negligence by the plaintiff Atkinson.

Appellants misconstrue the application of the doctrine of last clear chance. They would set up a four stage process in which the elements would be:

a. Primary negligence by defendant.
b. Contributory negligence by plaintiff.
c. A new act of negligence by defendant in failing to utilize an opportunity then existing to avoid harm, when he knows or should know of plaintiff's situation of helpless peril.
d. A new act of negligence by plaintiff in failing to utilize an opportunity then existing to extricate himself from his position of peril.

The Court of Appeals has never embraced all of these as necessary ingredients. In reaffirming *Meldrum v. Kel-*

*lam Distr. Co.,* 211 Md. 504, 128 A. 2d 400, and *Peregoy v. Western Md. R. R. Co.,* 202 Md. 203, 95 A. 2d 867, Judge Prescott said for the Court in *MacKenzie v. Reesey,* 235 Md. 381, 201 A. 2d 848, referring to last clear chance, at page 387:

> "The doctrine presupposes primary negligence on the part of a defendant, contributory negligence on the part of a plaintiff, and a showing of something new or independent, which affords the defendant a fresh opportunity (of which he fails to avail himself) to avert the consequences of his original negligence and the plaintiff's contributory negligence. In the case at bar, there was no showing of a chance on the part of the defendant to avoid the consequences of his (assumed) negligence and the decedent's contributory negligence. * * * In the absence of a necessary element of the doctrine, it can not be applied."

See also *Sears v. B. and O. Railroad,* 219 Md. 118, 148 A. 2d 366, which quoted an earlier discussion of the doctrine in *State, Use of Taylor v. Barlly,* 216 Md. 94, 140 A. 2d 173.

To determine whether the rule as thus stated is to be applied, the Court of Appeals has generally taken the original primary negligence of the defendant to be "assumed", although not always found to have been proved. However, the critical element is the existence of something new or independent, which affords the defendant a fresh opportunity, of which he fails to avail himself, to avert the consequences of whatever negligence had become part of the circumstances existing when the fresh opportunity is presented.

Any attempt to segment negligence of the plaintiff would create the anomaly described in Prosser, Torts, Third ed. (1964) at page 437:

> "A few courts, with something resembling billiard-parlor reverse English, have even pur-

ported to recognize a "last clear chance" doctrine in favor of the defendant, to bar the plaintiff's recovery; but since this comes out at exactly the same place as the defense of contributory negligence without the doctrine at all, and is calculated only to bewilder the jury with incomprehensible instructions, most courts have rejected any such idea."

The instructions given by Judge O'Donnell, taken as a whole, correctly stated the applicable law. There was no reversible error.

*Judgments affirmed, appellants to pay costs.*