# ALTON VANN, SR. *v.* WILBUR WILLIE ET AL.

[No. 148, September Term, 1977.]

*Decided December 20, 1978.*

*Samuel D. Hill*, with whom were *White, Mindel, Clarke & Hill* and *Lynn D. Tanner, Jr.*, on the brief, for appellant.

*C. Russell Fields*, with whom were *Charles S. Keyes* and *Keyes & Simmons* on the brief, for appellee Wilbur Willie. *Austin W. Brizendine, Jr.*, with whom were *Austin W. Brizendine* and *Brizendine & Brizendine* on the brief, for appellee H. E. Koontz Creamery, Inc.

COLE, J., delivered the opinion of the Court.

The Court of Special Appeals in the instant case agreed with the trial court in holding that the appellant, while swimming in the Bush River in Harford County, could not recover for injuries received when he collided with a motorboat. *Vann v. Willie*, 38 Md. App. 49, 379 A. 2d 411 (1977). The Court of Special Appeals, after determining that the appellant could not recover under any theory of Maryland tort law, concluded that under *Executive Jet Aviation v. City of Cleveland*,[1] 409 U. S. 249, 93 S. Ct. 493, 34 L.Ed.2d 454 (1972), admiralty law did not apply because the accident did not involve a vessel engaged in traditional maritime activity, *i.e.*, commercial activity.

In our view the appellant cannot recover under either maritime law or Maryland tort law simply because he failed to show negligence on the part of the alleged tort-feasors which proximately caused the harm complained of. Thus, under the facts of this case it was unnecessary for the Court of Special Appeals to address the issue as to when and under what circumstances admiralty law would be applicable in this

---

1. Before Executive Jet, if the tort was committed on navigable waters it was within admiralty jurisdiction; if the injury was suffered on land, it was not. Executive Jet modified this simplistic locality test and required that in addition there must be shown some connection with "traditional maritime activity."

State; we still regard this question as unanswered. Nevertheless, we shall affirm and state our reasons.

In August of 1973, H. E. Koontz, Inc. (Koontz) maintained certain shore property off the Bush River which was used in the summer by its higher echelon employees and their guests for recreational purposes. At the time of the accident Wilbur Willie (Willie), an executive employee, his wife, his daughter and son-in-law, Richard Varnedoe (Varnedoe), were staying at the property. Koontz kept a boat at the property for the use of its employees which was 16 to 18 feet long and powered by a sixty horsepower outboard motor. The windshield of the boat had sustained a one-quarter inch crack from top to bottom on its right side in 1969 or 1970 but had been repaired by a series of nuts, bolts and washers spaced three to four inches apart along the length of the crack. The boat had been used every summer since repaired without incident up to the day of this accident. The president of Koontz, Mr. Oursler, testified at the trial that the windshield as repaired was stronger than before and that the crack as repaired did not materially impair the vision of the operator of the boat.

The collision that gave rise to this controversy occurred August 16, 1973. Alton Vann, Sr. (Vann) was taking his usual late afternoon swim in the Bush River near the Koontz property, having chosen on that day to swim a stroke called the crawl. In the manner in which Vann executed this stroke, his face was alternately turned out of the water in order to breathe, then submerged. Meanwhile Varnedoe was operating the motorboat, towing Willie on water skis and steering the boat at times as close as twenty-five to forty feet from piers adjacent to the Koontz property.

Varnedoe approached the accident site from the opposite direction and Vann was unaware of being on a collision course with the approaching boat, neither having seen it bearing down on him nor having heard the boat's motor. Observers on the shore perceived that the boat and Vann were in danger of hitting each other, but their attempts to warn the parties were to no avail. Varnedoe misunderstood their gestures and Vann did not see them. Vann continued his crawl. Willie released the tow line and dropped into the water. As Varnedoe

cut the power and began to turn the boat sharply toward the center of the river to circle around to pick up Willie, the boat ran into Vann. Varnedoe jumped into the river and proceeded to assist Vann in reaching the shore. Vann had suffered injuries to his head and right forearm.

Vann filed suit in the Circuit Court for Harford County against Varnedoe for negligent operation of the boat; against Willie for negligently entrusting the boat to an incompetent operator; and against Koontz for entrusting an unsafe chattel to an incompetent operator and providing an unseaworthy boat.[2] The trial judge granted directed verdicts for Willie and Koontz.[3] Vann appealed to the Court of Special Appeals which affirmed and we granted certiorari to consider the issues presented by the parties.

Vann contends that he produced evidence of negligence and thus it was error for the trial judge to direct verdicts for Koontz and Willie. We have held that a case should be submitted to the jury "if there be any evidence, however slight, legally sufficient as tending to prove negligence . . . ." *Haraszti v. Klarman*, 277 Md. 234, 352 A. 2d 833 (1976); *Curley v. General Valet Service*, 270 Md. 248, 311 A. 2d 231 (1973); *Fowler v. Smith*, 240 Md. 240, 213 A. 2d 549 (1965). Thus, if Vann presented any evidence tending to show negligence which was the proximate cause of his injuries, the trial court erred in directing a verdict against him.

---

2. We shall not discuss the doctrine of seaworthiness since Vann, in his brief, concedes that he is not within the class of persons to whom maritime law has extended the absolute right to a seaworthy ship. *See* Kermarec v. Compagnie Generale, 358 U. S. 625, 79 S. Ct. 406, 3 L.Ed.2d 550 (1959); Pope & Talbot, Inc. v. Hawn, 346 U. S. 406, 74 S. Ct. 202, 98 L. Ed. 143 (1953); Seas Shipping Co. v. Sieracki, 328 U. S. 85, 66 S. Ct. 872, 90 L. Ed. 1099 (1946); Mahnich v. Southern S.S. Co., 321 U. S. 96, 64 S. Ct. 455, 88 L. Ed. 561 (1944); Earles v. Union Barge Line Corp., 486 F. 2d 1097 (3rd Cir. 1973); Grigsby v. Coastal Marine Service of Texas, Inc., 412 F. 2d 1011 (5th Cir. 1969); Shaver Transp. Co. v. Chamberlain, 399 F. 2d 893 (9th Cir. 1968); Consolidated Mach., Inc. v. Protein Products Corp. 428 F. Supp. 209 (D. Fla. 1976); Nikiforow v. Rittenhouse, 277 F. Supp. 608 (E.D. Pa. 1967); Hilton v. Aegean S.S. Co., 239 F. Supp. 268 (D. Or. 1965); Course v. Pacific Inland Nav. Co., 234 F. Supp. 676 (D. Or. 1964), aff'd, 368 F. 2d 540 (9th Cir. 1966), cert. denied, 386 U. S. 963 (1967); Morrell v. United States, 193 F. Supp. 705 (D. Cal. 1960), aff'd, 297 F. 2d 662 (9th Cir. 1961), cert. denied, 370 U. S. 960 (1962).

3. Varnedoe had reached an out of court settlement with Vann and had filed an "Agreement of Compromise and Release" in the circuit court.

Vann attempts to impose liability upon Koontz based on the theory of negligent entrustment as set forth in § 389 of 2 Restatement (Second) of Torts (1965):

> One who supplies directly or through a third person a chattel for another's use, knowing or having reason to know that the chattel is unlikely to be made reasonably safe before being put to use which the supplier should expect it to be put, is subject to liability for physical harm caused by such use to those whom the supplier should expect to use the chattel or to be endangered by its probable use, and who are ignorant of the dangerous character of the chattel of whose knowledge thereof does not make them contributorily negligent, although the supplier has informed the other for whose use the chattel is supplied of its dangerous character.

Vann concedes that while this Court has referred to § 389 at times, we have never applied this section to impose liability on the supplier of a chattel, citing our decision in *State v. Jones,* 186 Md. 270, 46 A. 2d 623 (1951). However, Vann urges us to apply § 389 to the facts of this case. Section 389 is predicated on the supplying of an *unsafe* chattel and the record shows that Vann failed to introduce any evidence to prove that the boat was unsafe. Six witnesses called by Vann all testified that the crack in the windshield did not materially obstruct their vision.

However, even assuming for the sake of argument that Vann proved that the boat was unsafe, his contention fails for the reason that § 389, comment d. of the Restatement provides for imposition of liability on the supplier "if, but only if, his conduct is, in law, the cause of bodily harm sustained by another . . .", and Vann failed to demonstrate that the repaired crack in the windshield of the boat was the proximate cause of his injuries.

We have defined proximate cause many times in our prior opinions to mean that negligence is not actionable unless it, without the intervention of any independent factor, causes the harm complained of. *Peterson v. Underwood,* 258 Md. 9,

264 A. 2d 851 (1970); *Traish v. Hasan,* 245 Md. 489, 226 A. 2d 573 (1967); *Garbis v. Apatoff,* 192 Md. 12, 63 A. 2d 307 (1949); *Holler v. Lowery,* 175 Md. 149, 200 A. 353 (1938). In *Peterson, supra,* a clothesline was attached to a wall which had been built some four and a half years before it collapsed killing a child. There was no apparent substantial change in the appearance or stability of the wall until it collapsed. The Court said that in the absence of direct proof an inference of negligence relied upon to show causation must amount to a reasonable likelihood or probability of causing the harm complained of rather than a mere possibility.

Here there was no evidence which showed that the crack so interfered with Varnedoe's vision that, had the crack not been there, Varnedoe would have seen Vann in the water. As Koontz pointed out, there were three other possible reasons why Varnedoe did not see Vann prior to striking him. First, Varnedoe's vision was obstructed by the rising bow of the boat as the right turn was initiated. Second, Varnedoe's vision was distracted by his wife, who was standing on the pier trying to attract his attention. Third, Vann's particular style of swimming presented a low profile in the water.

In short, Vann produced no competent evidence to show that this cracked windshield made the boat an unsafe chattel or that it was the proximate cause of his injury. All Vann showed was that he was struck by a boat which had a cracked windshield. This was not enough. Accordingly, the motion for a directed verdict was properly granted.

Vann employs a different therory of negligent entrustment in his effort to show that the trial court erred in directing a verdict for Willie. Vann argues that Willie is liable for the negligence of Varnedoe because he (Willie) was the bailee of the boat from Koontz. Vann relies on the case of *Smith v. Branscome,* 251 Md. 582, 248 A. 2d 455 (1968), in which this Court held that the bailee of an automobile was liable for injuries resulting from an accident involving the car after the bailee permitted an unauthorized and intoxicated person to drive the vehicle and rode along with him. This Court reasoned that the driver's negligence could be imputed to the bailee because the bailee had the right to control of the

vehicle. In our view, *Smith v. Branscome* is clearly distinguishable. Willie was not in the boat at the time of the accident, having been dropped into the water some distance behind the boat, and there is no evidence to show he was in a position to control its operation. The trial court properly directed a verdict for Willie.

For the foregoing reasons, we affirm the judgment of the Court of Special Appeals.

> *Judgment of Court of Special Appeals affirmed.*
> *Appellant to pay the costs.*