570 A.2d 348

**Christine Eichhorn SCHWARZ, Personal Representative of the Estate of Anthony James Eichhorn, et al.**

v.

**Daniel Lewis HATHAWAY, et al.**

**No. 623 Sept. Term, 1989.**

Court of Special Appeals of Maryland.

March 2, 1990.

Leonard A. Orman and Jay Irwin Block, Baltimore, for appellants.

Jeffrey B. Smith (Mykel Hitselberger and Smith, Somerville & Case, on the brief) Baltimore, for appellees.

Argued before WILNER, BISHOP and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

This case arises from a tragic accident that occurred on the outer loop of the Baltimore Beltway on the morning of July 1, 1986. Nineteen-year old Anthony Eichhorn, the decedent, was struck by a truck owned by Schilling Sanitary Systems, Inc., one of the appellees herein, and driven by its employee, appellee Daniel Hathaway.

At the point where the accident occurred, the outer loop consisted, from right to left, of an exit, or deceleration, lane leading to Md. Route 170, three 12–foot wide through lanes, and a four-foot wide paved shoulder. To the left of the shoulder was a grassy median strip that separated the outer from the inner loops. At or about the middle of the median strip was a guard rail. The distance between the guard rail and the left edge of the shoulder was 12 feet.

When struck, Mr. Eichhorn was in the middle of the shoulder, about eighteen inches from the left edge of the fast lane, straddling a motorcycle. The evidence conflicted as to whether he was walking the motorcycle or was

stationary. One witness said that Eichhorn was "just standing there" astride the motorcycle, that he was "standing still." Another witness claimed that Eichhorn was "straddled on the motorcycle, pushing it...."

Hathaway was driving his employer's pick-up truck in the left, or fast, lane of traffic. He noticed Eichhorn when still some distance away (at trial, Hathaway was unable to specify how far away he was when he first noticed Eichhorn; in his initial statement to the police, he said that he was about 500 yards away). He tried to move over to his right, apparently because his exit was not distant, but was unable to do so because of traffic. He admitted that he paid no further attention to Eichhorn until he was upon him and the accident occurred. The investigating State trooper placed the point of impact within the shoulder, thereby creating a compelling inference that Hathaway had drifted onto the shoulder. Death was likely instantaneous; by his own admission, Hathaway was going about 55 miles per hour when the accident happened. Eichhorn's motorcycle was struck by Hathaway's bumper and Eichhorn himself was struck in the head or the back by Hathaway's side view mirror and then by the cargo part of the truck.

This lawsuit was brought by the decedent's mother, hereinafter "appellant", both as his surviving parent and as personal representative of his estate. Over her objection, the case was submitted to a jury in the Circuit Court for Anne Arundel County on issues of Hathaway's primary negligence, the decedent's contributory negligence, and whether the decedent assumed the risk of what occurred. The jury returned a defendants' verdict, concluding: "We find for the Defendant, but we feel that the ... he was negligent in his actions, but we feel that Mr. Eichhorn was a contributory factor to the whole thing."

Dissatisfied with the jury's verdict, appellant has appealed the judgment entered on it. She contends that the trial court erred in:

1.  Failing to instruct the jury that the defendants were negligent as a matter of law and instead submitting the issue of their negligence to the jury;

2.  Failing to instruct the jury, as a matter of law, that Mr. Eichhorn was not contributorily negligent, and instead submitting that issue to the jury;

3.  Submitting the issue of assumption of risk to the jury;  and

4.  Refusing to instruct the jury on the doctrine of "last clear chance."

As we have seen, the jury's verdict rested on its findings that (1) Hathaway was negligent, but (2) the decedent was contributorily negligent.  It follows, therefore, that, if it was error to have submitted the issues of primary negligence and assumption of risk to the jury, the error was harmless.  The jury's finding of primary negligence gave appellant exactly what she would have gotten had the court made that finding as a matter of law.  And, as the jury expressly rested its verdict on a finding of contributory negligence, rather than on any notion of assumption of risk, appellant was not, in any way, harmed by the submission to it of the assumption of risk issue.  We are left then with the second and fourth issues.

In order for a party to an accident to be held responsible for its happening, two things must have coalesced:  The party was negligent, either primarily or contributorily, and his or her negligence was the proximate cause of the accident.  Concerning the test of contributory negligence, the Court of Appeals, in *Hooper v. Mougin*, 263 Md. 630, 633, 284 A.2d 236 (1971), has opined:

> To be contributorily negligent, a plaintiff must either perform or fail to perform an act which is a proximate cause of the particular injury of which he complains.  His conduct is judged by a norm of ordinary care and the failure by a plaintiff to meet this standard constitutes contributory negligence barring his recovery.

Stated differently, whether the decedent was contributorily negligent depends upon whether his conduct "was commensurate with the conduct of a reasonably prudent person acting under like or similar circumstances." *Schwier v. Gray*, 277 Md. 631, 635, 357 A.2d 100 (1976). *See also McSlarrow v. Walker*, 56 Md.App. 151, 161, 467 A.2d 196 (1983). Moreover,

> [w]here there is a conflict of evidence as to material facts relied upon to establish contributory negligence, or the act is of such a nature that reasonable minds, after considering all the circumstances surrounding the accident, may draw different conclusions as to whether it constituted contributory negligence, it is not for the court to determine its quality as a matter of law, but it is for the jury to pass upon it.

*Schwier*, 277 Md. at 635, 357 A.2d 100, quoting *Heffner v. Admiral Taxi Service*, 196 Md. 465, 473–74, 77 A.2d 127 (1950). While, as in the case of proof of negligence, ordinarily the question of proximate cause is one for the jury, it becomes one of law whenever the evidence adduced at trial fails to support a rational finding of proximate cause. *District of Columbia v. Freedman*, 477 A.2d 713, 716 (D.C.App.1984).

In support of its argument that the contributory negligence issue was properly submitted to the jury, the appellees rely heavily upon the decedent's presence on the mini-shoulder adjacent to the fast lane of the dual access highway. Relying upon his being "less than two feet from the fast lane of the major interstate, arterial, high speed highway, and less than an arms length from traffic approaching ... from the rear," they maintain that his situation there was extremely dangerous. Moreover, despite the absence of any evidence that the decedent was struck while on the traveled portion of the highway, or that he was struck by an appurtenance of the truck, while the truck itself remained on the highway, they also note the presence to the immediate left of the mini-shoulder of a grass-covered medi-

an strip at least twelve feet wide to which the decedent could have retired to await assistance.

The testimony of eyewitnesses to the accident is perceived by appellees as, not only introducing the question of the decedent's contributory negligence, but as tending to prove it, as well. One of these witnesses was driving the car that passed the decedent just ahead of Hathaway. That witness was concerned enough that the decedent "wasn't over far enough", that he watched him from his rear view mirror. Another witness testified:

> I come ... I come up over the hill when I noticed that there was a motorcycle on the ... on the east-bound side of the highway ... and I seen he was pushing it. And I had another guy with me. And I just mention to him, he should get over a little more. And it was a matter of seconds then I seen the impact....

In short, according to appellees, the decedent's sin consisted of merely being on the mini-shoulder.[1]

■ Assuming that the decedent's mere presence on the mini shoulder,[2] within two and a half feet of the traveled

---

1. That this is so is made patent by the concluding paragraph of appellees' argument on this issue in their brief:

   There was no evidence in the case that Eichhorn took even the most rudimentary safe-guards for his own protection. His proximity to the dangers of swiftly moving traffic and his failure to move further to his left and further away from those dangers (even appellant admits that Eichhorn could have moved two and a half feet further to his left and still remained on the mini-shoulder, without even considering the sixteen feet of grass-covered median) are clearly factors to be considered by the jury in determining whether Eichhorn should have appreciated the danger of his situation and whether he acted reasonably and prudently in face of that danger.

2. Maryland Transportation Ann.Code, § 21–509 provides that except when "an emergency prevents the movement of a vehicle in which he is riding and the person goes only to the nearest telephone or other source of assistance ...", "a pedestrian may not walk along a controlled access highway." This point was not raised at trial, nor, for that matter, at oral argument. It must be conceded, however, that the evidence presented at trial permitted an inference that, in walking his motorcycle along the Beltway, a controlled access highway, the decedent violated that statute. Nevertheless, where the issue of negligence

lane of traffic was evidence of negligence, the issue becomes whether there was sufficient evidence that that negligence was the proximate cause of the decedent's death as to require that the issue be presented to the jury. In *Holler v. Lowery*, 175 Md. 149, 161, 200 A. 353 (1938), the Court stated:

> There is no mystery in the doctrine of proximate cause. It rests upon common sense rather than legal formula. Expressed in the simplest terms, it means that negligence is not actionable unless it, without the intervention of any independent factor, causes the harm complained of. It involves of course the idea of continuity, that the negligent act continuously extends through every event, fact, act, and occurrence related to the tortious conduct of the defendant, and is itself the logical and natural cause of the injury complained of. In the statement of the doctrine an intervening cause means not a concurrent and contributing cause, but a superceding cause, which is itself the natural and logical cause of the harm.

*See, e.g., Traish v. Hasan*, 245 Md. 489, 495, 226 A.2d 573 (1967); *Garbis v. Apatoff*, 192 Md. 12, 16–17, 63 A.2d 307 (1949); *See also Vann v. Willie*, 284 Md. 182, 186, 395 A.2d 492 (1978) in which the Court reiterated: "We have defined proximate cause many times in our prior opinions to mean that negligence is not actionable unless it, without the intervention of any independent factor, causes the harm complained of." In *Peterson v. Underwood*, the Court made the very pertinent observation:

---

depends upon establishing a violation of law, the party carrying the burden of proof on that issue "must establish both the violation and its proximate cause relationship to the injury before the case is submitted to the jury." *Whitt v. Dynan*, 20 Md.App. 148, 154–55, n. 6, 315 A.2d 122 (1974). *See also Peterson v. Underwood*, 258 Md. 9, 15, 264 A.2d 851 (1970), in which the Court of Appeals stated, quoting *Austin v. Buettner*, 211 Md. 61, 70, 124 A.2d 793 (1956):

> It is a rule in this State that the mere violation of a statute will not support an action for damages, even though it may be evidence of negligence, unless there is legally sufficient evidence to show the violation was the proximate cause of the injury.

It should be clarified at this point that our inquiry is directed specifically to the issue of "causation in fact" which has been regarded as an aspect of "proximate cause." W. Prosser, *Handbook of the Law of Torts*, 41, at 240 (3d ed. 1964), 2 F. Harper and F. James, *The Law of Torts*, 20.2, at 1110 (1956). Proximate cause ultimately involves a conclusion that someone will be held legally responsible for the consequences of an act or omission. This determination is subject to considerations of fairness or social policy as well as mere causation. Thus, although injury might not have occurred "but for" an antecedent act of the defendant, liability may not be imposed if for example the negligence of one person is merely passive and potential, while the negligence of another is the moving and effective cause of the injury. *Bloom v. Good Humor Ice Cream Co.*, 179 Md. 384, 18 A.2d 592 (1941), or if the injury is so remote in time and space from defendant's original negligence that another's negligence intervenes. *Dersookian v. Helmick*, 256 Md. 627, 261 A.2d 472 (1970); *Liberto v. Holfeldt*, 221 Md. 62, 155 A.2d 698 (1959).

258 Md. 9, 16, 264 A.2d 851 (1970).

*Bloom v. Good Humor Ice Cream Co.* is instructive. There, a ten year old boy was induced by the driver of the ice cream truck to cross the street for the purpose of buying ice cream. After he made the purchase, the boy walked behind the truck and had started to re-cross the street when an automobile appeared suddenly and struck him. Suit was brought against the Good Humor Ice Cream Company and the driver of the truck for the injuries sustained by the boy. It alleged that the driver of the truck was negligent in inviting the boy to a place of danger and in failing to see that he safely returned to the other side of the street. In affirming the judgment entered in favor of the defendants, the Court acknowledged that, to be the direct and continuing cause of an injury, the negligent act or acts must be the moving and effective cause of the injury, not merely passive and potential. It concluded:

From the alleged facts in this case, it appears very clear that the accident to the appellant was brought about entirely by reason of the appellant leaving the ice cream truck, walking behind it to a place between the truck and the east sidewalk, and the sudden appearance of the automobile. That act on the part of the appellant, and the approaching automobile, were the separate and intervening causes of the accident.

179 Md. at 388, 18 A.2d 592.

█ In the case *sub judice*, unlike *Flohr v. Coleman*, 245 Md. 254, 225 A.2d 868 (1967), there is no controversy concerning whether the decedent was on the shoulder or on the traveled portion of the roadway. Nor, for that matter, is there any evidence indicating that the point of impact was anywhere other than on the mini-shoulder. The evidence was quite clear, on the other hand, that since the point of impact was on the shoulder of the road, appellee's truck must have drifted onto the shoulder and struck the decedent. It was that negligence, the failure of Hathaway to keep a proper lookout and control of his truck with the result that it drifted onto the shoulder and struck decedent, that was the direct cause of the decedent's death. Decedent's negligence, if negligence it is [3]—standing and/or walking a motorcycle along the mini-shoulder—was at best "merely passive and potential." On the other hand, Hathaway's negligence—failing to keep a proper lookout and control over his vehicle—was its "moving and effective

---

**3.** Blashfield Automobile Law and Practice, Vol. 4 (1965) 143.7 contains the following statement:

> If proceeding along the shoulder of the road, off the paved portion, [a pedestrian] is usually free from contributory negligence when injured; and his position is even more favorable when he is several feet off the highway. (Footnotes omitted)

*Mears v. McElfish*, 139 Md. 81, 114 A. 701 (1921) is cited in support of the former proposition. In that case, having determined that the path was muddy, the plaintiff moved from the left side of the road, where she was required to walk, to the right. The court held, under those circumstances, that contributory negligence was not established as a matter of law. 139 Md. at 84–85.

cause". It follows that the issue should not have been presented to the jury.

■  The remaining issue involves the applicability to the case *sub judice* of "last clear chance." Because the last clear chance doctrine presupposes the presence in the case of both primary negligence and contributory negligence, *MacKenzie v. Reesey*, 235 Md. 381, 387, 201 A.2d 848 (1964); *Smiley v. Atkinson*, 12 Md.App. 543, 552-53, 280 A.2d 277 (1971), our resolution of the contributory negligence issue necessarily is dispositive: this is not a case in which a last clear chance instruction should, or could, have been given.

JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR TRIAL.

COSTS TO BE PAID BY APPELLEES.

WILNER, J., dissents.

WILNER, Judge, dissenting.

I concur with the panel majority's resolution of Issues (1), (3), and (4). I dissent, however, from its conclusion that, as a matter of *law*, appellant's decedent was not contributorily negligent. On the record before us, I would hold that the issue of his contributory negligence was properly submitted to the jury, and so I would affirm the judgment.

It is not clear from the majority opinion whether the majority believes that Mr. Eichhorn was not negligent at all in walking his motorcycle on the four-foot shoulder or that he could properly be held to have been negligent but that his negligence did not contribute to the accident. At one point, the majority seems willing to assume that the decedent's presence on the shoulder constituted negligence, but at another point it raises some doubt—"[d]ecedent's negligence, if negligence it is—standing and/or walking a motorcycle along the mini-shoulder—was at best 'merely passive and potential.' "

I do not suggest that mere presence on the shoulder of any road constitutes, or could be taken to constitute, contributory negligence. But this was not any road or any shoulder. This was a narrow shoulder immediately adjacent to the passing lane of a controlled-access high speed Interstate highway. The evidence was certainly sufficient to demonstrate that Mr. Eichhorn was in a position of extreme danger as he walked or straddled his motorcycle on that narrow shoulder. If, as witnesses confirmed, he was in the middle of that four-foot wide shoulder, his body was likely within a foot and a half of the traveled portion of the highway. All sorts of vehicles travel in that lane, including wide and large trucks. One witness, who passed by Mr. Eichhorn just ahead of Mr. Hathaway, was concerned enough about Eichhorn's safety to watch him from the rear view mirror. His concern, he said, was because "[Mr. Eichhorn] wasn't over far enough." Although Eichhorn was on the shoulder, the witness noted, "I didn't know whether the truck could make it." Another witness expressed the same concern upon seeing Mr. Eichhorn on that shoulder:

> "I come ... I come up over the hill and I noticed that there was a motorcycle on the ... on the east bound side of the highway ... and I seen he was pushing it. And I had another guy with me. And I just mentioned to him, he should get over a little more. And it was a matter of seconds then I seen the impact...."

Appellant argues that, because the evidence showed that the grassy strip dividing the highway was somewhat rutted and uneven, it was not feasible for Mr. Eichhorn to walk his motorcycle on that strip. That may or may not be, but it does not detract from the evidence that remaining on the shoulder was extremely dangerous. Under the circumstances, a reasonable jury could well find that a reasonably prudent person in Eichhorn's situation, whatever it was, would have recognized the obvious danger and moved on to the grassy strip and remained there until help arrived. What Mr. Eichhorn did was not substantially different from

standing a foot or two away from a person bound to a stake and about to be shot by a firing squad. One can always hope that the soldiers will shoot straight and hit only the intended victim, but I daresay it would be foolish and unrealistic not to appreciate that, by human or mechanical error, a lethal missile may go astray.

The contributory nature of Mr. Eichhorn's negligence is apparent; indeed, in this circumstance, it arises from the very nature of the negligence. He placed himself in a position where, if a vehicle traveling at high speed strayed by more than a foot or so, he was most likely to be severely injured or killed. That was the negligence. He was, in fact, killed when precisely that event occurred. To try to distinguish between "passive" and active or "potential" and actual negligence in this circumstance makes no real sense. If Mr. Eichhorn was negligent in walking his motorcycle less than two feet from the left lane of the Beltway, that negligence clearly contributed to the injuries he received.

"To be contributorily negligent," said the Court in *Hooper v. Mougin,* 263 Md. 630, 633, 284 A.2d 236 (1971), "a plaintiff must either perform or fail to perform an act which is a proximate cause of the particular injury of which he complains. His conduct is judged by a norm of ordinary care and the failure by the plaintiff to meet this standard constitutes contributory negligence barring his recovery." Put another way, the question is whether the plaintiff's conduct "was commensurate with the conduct of a reasonably prudent person acting under like or similar circumstances." *Schwier v. Gray,* 277 Md. 631, 635, 357 A.2d 100 (1976). As further made clear in *Schwier,* quoting from *Heffner v. Admiral Taxi Service,* 196 Md. 465, 473–74, 77 A.2d 127 (1950):

"Where there is a conflict of evidence as to material facts relied upon to establish contributory negligence, *or the act is of such a nature that reasonable minds, after considering all the circumstances surrounding the accident, may draw different conclusions as to whether it constituted contributory negligence,* it is not for the

court to determine its quality as a matter of law, but it is for the jury to pass upon it."

(Emphasis added.)

That, I think, was precisely the situation here. It was a jury issue, and this Court has no business interfering with the jury's resolution of it.