995 F.2d 1065
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Henry J. WERDANN; Margaret Werdann, Plaintiffs-Appellees,
v.
BILL & JENNY ENTERPRISES, INCORPORATED, Defendant-Appellant,
and
Niles AUSTIN; William Jones, Defendants.
 No. 92-1739.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 3, 1993.
Decided: June 18, 1993.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. M. J. Garbis, District Judge. (CA-87-2180-MJG)
 Argued: Nancy Furey Peters, Omaha, Nebraska, for Appellant.
 Leonard A. Orman, Leonard A. Orman, P.A., Baltimore, Maryland, for Appellee.
 On Brief: David W. Allen, Goodell, Devries, Leech & Gray, Baltimore, Maryland, for Appellant.
 D.Md.
 VACATED AND REMANDED.
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and HILL, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Bill & Jenny Enterprises, Inc. (B.J.), a Maryland corporation, appeals the denial of its motion for j.n.o.v. or new trial following a jury verdict against it in a personal injury highway collision action brought by Henry and Margaret Werdann, New Jersey residents. We vacate and remand for a new trial because of plain error in jury instructions on contributory negligence.
 
 
 2
 * This case arose from a collision between a tractor-trailer rig driven by Henry Werdann with a disabled car carrier owned by B.J. that had been left on the edge of I-95 near Baltimore by its operator, Niles Austin. The collision occurred during darkness at around 5:30 AM on August 20, 1986. Werdann brought this diversity action to recover damages for injuries sustained in the collision; his spouse Margaret joined with a claim for loss of consortium.
 
 
 3
 B.J.'s driver, Austin, testified at trial that when the vehicle became disabled late on the night of August 19, he parked it on the right hand shoulder of I-95, two or three feet inside and parallel to the white line that marked the separation of shoulder from travel lane. Photographs of the scene and the testimony of Maryland State Trooper Arthur Pfister and accident reconstruction expert Dr. James A. Kirk supported Austin's account, if accepted as accurate depictions of location before impact.
 
 
 4
 When he could not restart the carrier, Austin put a triangular reflector behind it and walked five miles to a restaurant to phone B.J. president William Jones for help. About an hour later, Jones met Austin at the restaurant. The men returned to the carrier, which still would not start. Having requested a tow truck, they left the carrier with its running lights on and with another triangular reflector behind it. They did not set out three flares or other warning devices as required by Maryland law. Md. Transp. Code Ann. §§ 22-407, -408 (1991). Trooper Pfister estimated, however, that some 200 vehicles passed the carrier without incident during the hour preceding 5:30 the next morning, when the tractor-trailer driven by Werdann collided with it. J.A. 190.
 
 
 5
 Werdann testified that he had not strayed onto the shoulder before "an image loomed up" in front of him and his rig smashed into the rear of the carrier. J.A. 21. He also testified that the carrier protruded from the shoulder onto the roadway by about a foot. When asked on cross-examination whether he could tell the jury under oath that the carrier was on the roadway, however, he replied that he could not. J.A. 51-52.
 
 
 6
 Werdann also presented deposition testimony of Dr. Bernard S. Abrams, an expert on the subject of night vision. Dr. Abrams testified that Werdann probably would not have had sufficient time to discern the car carrier and react to it before colliding with it, given the rate of speed at which he was travelling and the reach of his headlights, J.A. 119, but opined that he should have seen it at least 100 feet away. J.A. 120. A tachograph installed in Werdann's vehicle to gauge speed and changes of direction showed that he failed to react in any way before the collision. J.A. 95.
 
 
 7
 The court instructed the jury generally on the law of negligence and contributory negligence, the latter of which in Maryland is a complete bar to recovery. Schwarz v. Hathaway, 82 Md. App. 87, 570 A.2d 348, 350, cert. denied 320 Md. 351, 578 A.2d 191 (1990). The court did not instruct the jury, as B.J. had requested, that if Werdann failed in his duty to keep a proper lookout he could be found contributorily negligent. B.J. preserved no record objection to the failure to give this instruction.
 
 
 8
 The jury returned a verdict for Werdann and his wife in the amounts of $202,700 and $25,000, respectively. The court denied B.J.'s motion for j.n.o.v. or a new trial. This appeal followed.
 
 II
 
 9
 On appeal, B.J. contends that the district court erred in denying the motion for j.n.o.v., abused its discretion in denying the alternative motion for new trial, and erred as a matter of law in failing to instruct the jury specifically, as B.J. requested, on Werdann's duty to keep a proper lookout. We address these contentions in order.
 
 
 10
 * We review the district court's denial of B.J.'s motion for j.n.o.v. by viewing all the evidence in a light most favorable to Werdann to determine whether substantial evidence exists upon which a reasonable jury could have rendered a verdict in his favor. Austin v. Torrington Co., 810 F.2d 416, 420 (4th Cir.), cert. denied, 484 U.S. 977 (1987).
 
 
 11
 The record contains B.J.'s stipulation, J.A. 6-7, that it failed to set up flares or other warning devices in violation of Maryland law. This stipulation establishes a prima facie case of negligence. Fisher v. O'Connor's, Inc., 53 Md. App. 338, 452 A.2d 1313 (1982). At oral argument before this court, however, B.J. contended that the stipulation was in error. The record also reflects that the court submitted the issue of negligence to the jury. J.A. 299.
 
 
 12
 We assume for the purposes of decision that the stipulation was not properly before the district court. Even so, we agree with the district court that Werdann's testimony that he did not stray onto the shoulder and that, instead, the carrier protruded into the roadway sufficed to get his case to the jury on the issues of B.J.'s negligence and his own lack of contributory negligence. J.A. 312-313.
 
 B
 
 13
 We next briefly note B.J.'s bare suggestion-without developed argument-that the court erred in declining to set aside the verdict as against the weight of the evidence, as an alternative to granting j.n.o.v. If such a ruling is subject at all to review-a matter on which we have not been perfectly consistent over the years- compare, e.g., Fischer v. United States, 318 F.2d 417, 418 (4th Cir. 1963) (per curiam) (not reviewable), with Sloan v. Colebank, 304 F.2d 668, 669 (4th Cir. 1962) (reviewable for abuse of discretion)-it is reviewable only for abuse of discretion, and that with even more than the usual deference implied by that standard. See Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350, 354 (4th Cir. 1941) ("not reviewable on appeal save in the most exceptional circumstances").
 
 
 14
 Here, assuming that we have power to review such a ruling in the face of the Seventh Amendment's constraints, see generally 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2819 (forbidden by Seventh Amendment), we would find no sufficient abuse of discretion in the court's refusal to set aside the verdict on this ground.
 
 C
 
 15
 Finally, we address B.J.'s argument that the district court erred to its prejudice in failing to give the specific instruction it requested on Werdann's failure to keep a proper lookout as bearing on contributory negligence. And on this point we agree with B.J.
 
 
 16
 We start with the assumption that objection to the failure to include that instruction was not properly preserved. There is no question that it was requested. There is no question that B.J. failed to observe the Rule 51 requirement that objection to instructions, including failures of inclusion, must be made for the record following their giving. There is an unopposed suggestion that-as perhaps too frequently occurs-B.J. was led not to note formal objection by the court's statement to counsel following its charge to the jury that objections earlier made need not be repeated. See Appellant's Reply Br. 11; J.A. 296. Be that as it may, B.J.'s failure to observe Rule 51's salutary requirement confines our review to determining whether the error urged was of the "plain" or fundamental type that requires reversal despite procedural default, in order to avoid fundamental injustice. Among such errors are jury instructions which by misstating or omitting fundamentally controlling substantive principles create a high probability that the jury's verdict against the appellant was caused by its resulting misapprehension of critically controlling law. See, e.g., Furka v. Great Lakes Dredge & Dock Co., 755 F.2d 1085, 1088-90 (4th Cir.), cert. denied, 474 U.S. 846 (1985) (failure to instruct specifically on plaintiff's duty of care in rescue situation); Miller v. Premier Corp., 608 F.2d 973, 983 (4th Cir. 1979) (misstatement of law governing right to recover); Edwards v. Mayes, 385 F.2d 369, 373 (4th Cir. 1967) (failure to instruct specifically on one of plaintiff's theories of negligence).
 
 
 17
 We conclude that the failure to instruct on this particular theory of contributory negligence here was such a fundamental error and that remand for a new trial is therefore required.
 
 
 18
 This theory of Werdann's contributory negligence went to the very "soul" of B.J.'s defense on that ground. See Furka, 755 F.2d at 1089. The district court's instruction on contributory negligence made no mention of it. The instruction consisted of a short, general statement that equated the reasonable-person duty of care owed by plaintiffs to that owed by defendants in the operation of motor vehicles; explained that the negligence of either or both here could be proximate causes of the accident; and directed the jury how it should find depending upon its negligence and proximate cause determinations as to each party. The only specific theory of contributory negligence suggested for jury consideration was B.J.'s alternative one: that Werdann was "driving on the shoulder", which the court"gather[ed] will be contended," J.A. 282-83. This theory was then further emphasized, to the exclusion of the other, by the court's submitting, at Werdann's request, a special interrogatory as to where the impact took place, and instructing the jury that the burden was on B.J. to prove that its vehicle was on the shoulder when the impact occurred in order to prevail on this theory. J.A. 284, 300.
 
 
 19
 Given the overall cast of the evidence, we are satisfied that the district court's instructions on contributory negligence, coupled with the special interrogatory focusing inquiry solely on the place of impact, completely undercut B.J.'s principal theory of contributory negligence-that Werdann failed to keep a proper lookout. That theory could of course have prevailed without regard to where the impact took place, particularly in view of Werdann's equivocation on the question of the location of the B.J. vehicle. And a brief review of the relevant evidence confirms the high probability that by virtue of these instructions the jury failed to appreciate this critical aspect of the contributory negligence defense.
 
 
 20
 Indeed, the only evidence-from either side-related specifically to when Werdann first saw the B.J. vehicle (as opposed to when he first could have seen it) and what he did when he saw it so strongly suggested a failure to keep a proper lookout that the risk of jury misapprehension of the legal relevance of this evidence is manifest. By Werdann's own testimony, he first saw the B.J. vehicle-wherever it was-when he was only 50 feet away. J.A. 50. By his own expert's testimony, he should have been able to see it-if he was properly looking ahead-at least 100 feet away. J.A. 120. By the estimate of investigating officers familiar with traffic flow on the highway, during the hour before the impact around 200 other vehicles had safely passed the B.J. vehicle under the same conditions of visibility that Werdann experienced. J.A. 131, 189-90. According to the tachograph installed in Werdann's vehicle, he did not react in any way before the impact. J.A. 92-97.
 
 III
 
 21
 Because the district court's jury instructions on contributory negligence constituted plain or fundamental error, we vacate the judgment and remand for a new trial.
 
 SO ORDERED