547 A.2d 1115

**Mary Louise RISTAINO, et al.**

v.

**Linda Ann FLANNERY.**

**No. 66, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Oct. 4, 1988.

Thomas V. Friedman (Michael T. Ward and Law Offices of Peter G. Angelos, on the brief), Baltimore, for appellants.

Allen W. Cohen (Goodman, Cohen & Bennett, P.A., on the brief), Annapolis, for appellee.

Argued before BISHOP, BLOOM and WENNER, JJ.

BISHOP, Judge.

Plaintiffs below, Mary Louise Ristaino, Carmen A. Fowler and Mary Fowler [1] appeal from a jury verdict entered in the Circuit Court for Anne Arundel County (Goudy, J.) in favor of the appellee, Linda Ann Flannery.[2]

Appellants present the Court with three issues:

I. Where the cause of an accident was admittedly appellee's vehicle being on the wrong side of the center line of the road, did the trial court commit reversible error by instructing the jury that "the mere happening of an accident creates no presumption of negligence" when the jury was also instructed that appellee's crossing of the center line raises a presumption that appellee was negligent?

II. Was there sufficient evidence to justify the trial court's instruction to the jury that "when a driver of a motor vehicle is faced with a sudden emergency, which was not created by that driver's own negligent conduct, the driver must exercise reasonable care of a person in the circumstances"?

---

1. When this case was filed in the Circuit Court on December 30, 1983, it included two additional plaintiffs, Teresa Marie Ristaino and Antonio J. Ristaino; however, both of their claims were settled before trial.

2. Co-defendant Ronald Edward Flannery was dismissed from the case by way of a Motion for Summary Judgment. No appeal was noted from that ruling.

III. Did the trial court err in denying appellant's motion for judgment and motion for judgment not withstanding the verdict?

For the reasons below we affirm the rulings of the circuit court.

## FACTS

On the afternoon of December 4, 1981, Antonio J. Ristaino, accompanied by his wife, Mary Louise Ristaino, his daughter, Teresa Marie Ristaino, and his granddaughter, Carmen A. Fowler, was driving easterly on State Route 450. Approximately one-quarter mile east of the intersection of State Route 450 and Rutland Road, as their car rounded an approximately 90 degree curve, it was struck, head on, by a vehicle operated by Linda Ann Flannery. The general speed limit on that route is 50 miles per hour with a posted safe speed of 30 miles per hour at the curve. The parties stipulated at trial that the accident was caused when the Flannery vehicle crossed the double yellow line into the Ristainos' lane. No evidence was offered by Ms. Flannery as to any negligence on the part of Antonio Ristaino.

The only evidence on liability produced by appellee was her own testimony. She testified that it was drizzling but not freezing, that she was traveling at a safe speed, somewhere under 40 miles per hour, and that as she approached the apex of the curve on the inside lane, for some unexplained reason, her vehicle skidded over the center line into the Ristainos' lane and struck the appellants' car. Ms. Flannery testified that she tried to steer away from the Ristaino vehicle but her vehicle would not respond.

The appellants advise us that at the close of the evidence, while in the judge's chambers and off the record, they made a motion for judgment, which was denied. The judge then instructed the jury, *inter alia,* that:

> You are instructed that the mere happening of an accident complained of creates no presumption of negligence on the part of the Defendant.... Rather, the

burden is on the Plaintiff to prove by a fair preponderance of affirmative evidence satisfactory to you that the Defendant was negligent in the operation of her vehicle....

A driver who violates the rule of the road and I'll give you the rules in a minute, is prima facie guilty of negligence where the violation directly and proximately causes a collision and injury to another traveler on the road and the burden is then cast upon the driver to overcome the presumption of negligence by showing that under the circumstances such as the condition of the road or an emergency situation in traffic, he was justified in driving in the center or ... upon the left half ... of the roadway....

You're further instructed that when a driver of a motor vehicle is ... faced with a sudden and real emergency which was not created by that driver's own negligent conduct, the driver must exercise reasonable care for his safety and for the safety of others. The reasonableness of the driver's action must be measured by the standard of the acts of other drivers of ordinary skill and judgment faced with the same situation. The driver is not to be held to the same coolness or accuracy of judgment which is required of a person who had had an ample opportunity fully to exercise judgment....

The appellants noted an exception to each of these instructions, which exceptions were denied. The circuit court also denied appellants' post trial motions for judgments notwithstanding the verdicts and for a new trial.

## I.

### *"Mere Happening" Instruction*

Appellants claim that the trial court committed reversible error when it gave the "mere happening of an accident" instruction. They argue that it was "ambiguous, misleading or confusing to the jurors" to instruct them that, on the one hand, Ms. Flannery was presumed to be negli-

gent but at the same time to tell them that the mere happening of an accident creates no presumption of negligence. We do not agree. We look first at the individual instructions and then at the combined effect of both within the context of all of the applicable instructions and the facts of the case.

(a.)

*The Individual Instructions*

A presumption of negligence created by the basic fact that a driver was on the wrong side of the road is called a "true evidentiary presumption." [3] *See* McClain, Maryland Evidence, § 301.1e (1987). Its effect is to shift the burden of production as to the presumed fact (negligence of the driver who crossed the center line) to the opposing party. *See, Gilbert v. State*, 36 Md.App. 196, 203, 373 A.2d 311 (1977). Once the burden of production has shifted, one of four possible scenarios should occur: If the defendant does not offer any evidence to rebut the presumption then the court should instruct the jury that if they find the basic facts which give rise to the presumption then they must find the presumed fact. *Grier v. Rosenberg*, 213 Md. 248, 254, 131 A.2d 737 (1957). Alternatively,

> If there is countervailing evidence that is so slight as to be insufficient to be considered by the jury in rebuttal of the presumption, the court [again] should grant an instruction giving full benefit of the presumption. On the other hand, the countervailing evidence may be so conclusive that it shifts the burden or duty of going forward with the evidence back to the plaintiff, in which event the defendant would be entitled to a directed verdict, if the plaintiff does not produce evidence in reply, unless there

---

**3.** The true evidentiary presumption is to be distinguished from those presumptions which are a mirror image of the burden of proof. That class of presumption is rebutted only if the opposing party meets the burden of persuasion. McClain, *supra,* § 301.1d at 184.

is already evidence in the case tending to contradict the defendant's evidence.

(In the immediate preceding scenario the jurors would not receive any instruction regarding the presumption. McClain, Maryland Evidence, § 301.2(c) at 202). And finally:

> [T]here may be times when the evidence may fall between the two categories mentioned above, in which event the issue ... should be submitted to the jury.

*Bratton v. Smith,* 256 Md. 695, 703, 261 A.2d 777 (1970) (citing *Grier v. Rosenberg,* 213 Md. at 254, 131 A.2d 737).

In this last scenario there has been wide disagreement as to the proper form of jury instructions. Under the Thayer/Wigmore [4] position the "bubble" of the presumption is burst by the offering of rebuttal evidence and the presumption disappears, removing the need for any instruction. McCormick on Evidence § 345(A) (2nd ed. 1972). The Court of Appeals has rejected this view and instead has adopted the McCormick position that:

> [I]t is a more natural practice, ... *to mention the presumption,* so that the jury may appreciate the legal recognition of a slant of policy or probability as the reason for placing on the party this particular burden". (Italics supplied.)

*Grier v. Rosenberg,* 213 Md. at 254, 131 A.2d 737 (citing McCormick on Evidence pp. 667–672 (1954 Ed.)). In so doing, the Court has clearly chosen the more difficult path for the trial judges. As McCormick himself admits:

> [T]he manner in which the jury is to be informed has been a matter of considerable dispute and confusion. The baffling nature of the presumption as a tool for the art of thinking bewilders one who searches for a form of phrasing with which to present the notion to a jury. Most of the forms have been predictably bewildering.

---

**4.** This position can be traced to Thayer, Preliminary Treatise on Evidence, ch. 8 § 14, 336 (1898) and 9 Wigmore, Evidence § 2491(2) (3d ed. 1940).

McCormick, *supra*, at 825. McCormick identifies two preferable methods for instructing the jury so as to minimize the confusion. He suggests that either:

■ [T]he judge instruct the jury that the presumption is to stand accepted, unless they find that the facts upon which the presumed inference rests are met by evidence of equal weight, or in other words, unless the contrary evidence leaves their minds in equipoise, in which event they should decide against the party having the burden of persuasion upon the issue. It is hard to phrase such an instruction without conveying the impression that the presumption itself is "evidence" which must be "met" or "balanced." The overriding objection, however, is the impression of futility that it conveys. It prescribes a difficult metaphysical task for the jury, and, in actual use, may mystify rather than help the average juror.

McCormick, *supra*, at 825. Or, alternatively, for the judge

■ [S]imply to mention the basic facts of the presumption and to point out the general probability of the circumstantial inference as one of the factors to be considered by the jury. By this technique, however, a true presumption would be converted into nothing more than a permissible inference.

*Id.*[5]

The judge's instruction to the jury in the case *sub judice* is a proper example of McCormick's first alternative instruction to be used in cases where the evidence to counter the presumed fact (that the defendant was negligent) does not absolutely confirm or destroy the presumption and the validity of the presumption is thereby left to the jury. In light of Ms. Flannery's rebuttal evidence that she was going

---

**5.** Professor McClain implies that the proper jury instruction where the evidence does not absolutely destroy or affirm the presumption is to tell the jurors that if they find the basic facts then they "may" find the presumed fact. McClain, Maryland Evidence, § 301.2 at 197. This position, however, suffers from the same inadequacy as the McCormick's second alternative, *supra.* It improperly converts the presumption into an inference.

a safe speed and could not explain why her car skidded on the wet road, the court properly presented the issue of the presumption to the jury with an instruction that:

> A driver who violates the rule of the road and I'll give you the rule in a minute, is *prima facie* [presumed[6]] guilty of negligence where the violation directly and proximately causes a collision and injury to another traveler on the road and the burden is then cast upon the driver to overcome the presumption of negligence by showing that under the circumstances such as the condition of the road or an emergency situation in traffic, he was justified in driving in the center or ... upon the left half of the ... roadway.

The proper effect of this instruction on the jury should have been that if they found that the defendant violated the rules of the road, then they were to presume the defendant's negligence; however, if they believed the defendant's explanation, and that explanation was sufficient to overcome the presumption, then they would ignore the presumption. The jurors would not be free at that point to presume at their option; the presumption would have simply been inapplicable to the case and the jury would proceed to consider the case as if there had never been a presumption.

The court's "mere happening of an accident" instruction is also a proper instruction in the case *sub judice* because it follows as a logical consequence the presumption instruction. If the jury determined that the defendant's evidence was sufficient to overcome the presumption they would still be free to find the defendant negligent, if the plaintiff's case was sufficient, without the presumption, to satisfy the burden of persuasion. For example, the jurors could have found that although Ms. Flannery was not negligent in allowing her car to cross the center line, she was negligent

---

**6.** The use of the term "prima facie" in reference to a true evidentiary rebuttable presumption is a poor choice of words. This term more properly is used to mean "sufficient evidence" to get to the jury. A burden which, if met, satisfies the burden of production. McClain, *supra,* § 301.4 at 230–231.

in failing to take appropriate remedial actions to return the vehicle to the right side of the roadway before the impact occurred. As the trial judge properly anticipated, they might also have concluded that because the appellants, by stipulation of the parties, were not negligent then, by the process of elimination, Ms. Flannery must have been the negligent party. The trial judge remedied this difficulty by giving the appropriate guiding instruction that the mere happening of an accident did not in itself give rise to a presumption of negligence.[7]

(b.)

### The Combination of Instructions

■ Although both the "mere happening" and the presumption of negligence instructions were *proper* instructions in the case *sub judice,* we must consider the combination of the two in light of the rule that prohibits the court from giving instructions that confuse or mislead the jurors. *See, Wintrobe v. Hart,* 178 Md. 289, 296, 13 A.2d 365 (1940). And if multiple conflicting presumptions are applicable, then the court should weigh the considerations behind each presumption in deciding on which presumption to instruct the jury. *See, Schmeizl v. Schmeizl,* 184 Md. 584, 594–5, 42 A.2d 106 (1945) (cited in McClain, Maryland Evidence, § 301.5); *see also, Pindell v. Rubenstein,* 139 Md. 567, 115 A. 859 (1921) (Although this case does not involve conflicting presumptions, but rather a presumption and a conflicting non-presumption, the logic of weighing the costs/benefits of each instruction is appropriate).

In *Pindell v. Rubenstein,* the Court held that it was improper to give both an instruction that the inference of negligence could have been drawn from the happening of the accident itself (*res ipsa loquitur*) and an instruction that no presumption of negligence arises from the mere

---

7. The mere happening of an accident instruction as framed by the lower court is a proper instruction. *See, Schaub v. Community Cab, Inc.,* 198 Md. 216, 225, 81 A.2d 597 (1950); *Peterson v. Underwood,* 258 Md. 9, 19, 264 A.2d 851 (1970).

happening of an accident. *Id.* at 578–579, 115 A. 859; *see also, Unsatisfied Claim & Judgment Fund Board v. Bowles,* 25 Md.App. 558, 563, 334 A.2d 532 (1975). The Court in *Pindell* did not further explain its reasoning and we can only speculate that the Court was concerned that any potential benefits of giving both instructions were outweighed by the risk that the jury would have been unable to understand the highly technical distinction between a presumption and an inference. Consider, for example, Professor McClain's explanation:

> True evidentiary rebuttable presumptions shift the burden of production of evidence, upon proof of the basic fact, as to the presumed fact in civil cases. Permissible inferences, which, confusingly, also are often called rebuttal presumptions, merely have the effect that upon proof of the basic fact, the burden of production is met as to another fact; the second fact may be, but need not be, inferred from the first fact.

McClain, Maryland Evidence, § 301.4 (citations omitted).

In a *res ipsa loquitur* case such concern for possible confusion of the jurors is understandable, given the obvious conflict between the instructions. On the one hand, the jury might perceive that they are being told to infer/presume negligence from the mere happening of an accident while at the same time they might believe that they are being instructed not to infer/presume negligence from the mere happening instruction. In the case *sub judice*, however, the concerns are reversed. The potential for confusing the presumption of negligence arising from the crossing of the center line with the instruction not to presume negligence from the mere happening of an accident is outweighed by the risk that the jury may have decided that the presumption had been overcome but that fault must be assigned to the defendant because, by the process of elimination, she was the only party whom they had not been instructed to find not negligent. The risk of confusion in giving both instructions in the case *sub judice* was also

countered by the order in which Judge Goudy gave the instructions:

1. The mere happening of an accident instruction.
2. Burden of proof is on the plaintiffs.
3. Negligence defined.
4. Skidding alone is not evidence of negligence.
5. Sudden emergency instruction.
6. Presumption of negligence from violation of traffic laws.
7. Plaintiffs were not negligent.
8. Explanation of traffic laws.

The jury was first instructed as to the general legal proposition that the mere happening of an accident does not give rise to a presumption of negligence. This general statement was later modified to account for the applicable presumption of negligence, which was followed immediately by the instruction that plaintiffs were not negligent and a recitation of the traffic laws which the defendant violated. This final series of instructions greatly swayed the instructions in favor of the appellants' case. The initial "mere happening" instruction was isolated by the order of the court's instructions from the court's final instruction that the plaintiffs were not negligent and that the defendants needed to overcome a presumption of negligence. Considering both the significant need for the two instructions and the lesser risk of confusion in giving both instructions, the court did not err in giving both instructions

## II.

### *Sudden Emergency Instruction*

■ Appellants next complain that the trial court erred in giving the "sudden emergency" instruction. They assert "that the Defendant in this case contributed to the events

which brought about the emergency and under such circumstances an emergency instruction is inappropriate."

The Court of Appeals discussed the "sudden emergency" instruction in *Baker v. Shettle*, 194 Md. 666, 72 A.2d 30 (1950):

> It is held by the weight of authority, that if there is evidence in a case legally sufficient to show that an emergency existed, it becomes a question of fact for the jury. It must be found that a defendant in such a case was free from negligence, because an emergency can never exist if the accident was caused by negligence, and what might ordinarily be negligence in a case where no emergency exists, may not be negligence in the case of an emergency. In such a situation one does not have time to think what is the best thing to do; the emergency occurs so quickly that it would be unjust to apply the rule which governs in the ordinary case. So that the rule in an emergency is that one must act as a reasonably prudent man would act in view of the emergency.
>
> In *Fogle v. Phillips*, 191 Md. 114, 119, 60 A.2d 198, 200, the court said: 'Where the facts are disputed the question whether an accident was unavoidable as a result of an emergency is for the jury.' (citations omitted.)

*Id.* at 671, 72 A.2d 30 (1949). *See also, Mason v. Triplett,* 217 Md. 433, 438, 141 A.2d 708 (1958).

In the case *sub judice*, the *prima facie* evidence to support a sudden emergency instruction was provided by Ms. Flannery's testimony that her car inexplicably skidded on the wet road onto the appellants' side of the highway, although her speed was in accordance with the posted limit and that she was otherwise operating her vehicle in a safe manner. This was sufficient to support the instruction. The appellants, by contrast, testified that Ms. Flannery negligently created the peril by her own excessive speed. Based upon this evidentiary dispute, the trial judge properly let the jury decide the issue of whether Ms. Flannery's

negligence created the emergency situation. We find no error.

## III.

### *Motions for Judgment and Judgment N.O.V.*

Appellants' final argument is that the trial court erred in denying their motion for judgment and their motion for judgment notwithstanding the verdict. We decline to discuss this issue. Neither of the alleged errors was properly preserved for our review.

Appellants made their motion for judgment while the parties were in the judge's chambers and no part of that proceeding was put on the record. The only mention of the motion in the record is a statement made by appellants' attorney at the bench following the jury instructions. He stated that "[t]he plaintiffs except to the Court's failure to instruct the jury.... I should say, excepts to the Court's failure to direct a verdict for the Plaintiffs as to the liability."

Maryland Rule 2–519(a) provides:

A party may move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party and in a jury trial at the close of all the evidence. The *moving party shall state with particularity all reasons why the motion should be granted.*

The particular reasons stated must appear on the record and a failure to comply effects a waiver of the right to appeal the denial of the motion. As the Court of Appeals noted in *Rockville Investment Corp. v. Rogan,* 246 Md. 482, 229 A.2d 76 (1967):

There is nothing before this Court to review. After making its motion for a directed verdict at the close of appellees' case, which motion was denied, appellant offered evidence to support its theory of the case and to rebut the evidence presented by appellees. The motion

for directed verdict was withdrawn by the appellant's presentation of evidence. Maryland Rule 552 b. *Schmidt v. Millhauser,* 212 Md. 585, 130 A.2d 572; *Smith v. Carr,* 189 Md. 338, 56 A.2d 151. At the close of all the evidence appellant made a motion for a directed verdict without stating the grounds therefor, as he had done previously for the motion made at the close of the evidence offered by appellees. *The record indicates that there was argument on this motion, but it does not reveal any portion of that argument nor the grounds for this motion. A party has the obligation to state for the record the grounds of his motion for a directed verdict in order to inform the court and the counsel for the non-moving party.* Rule 552 a;....

*Id.* at 484–485, 229 A.2d 76 (emphasis added.) [8] The appellants did not preserve, on the record, their grounds for the motion. By that failure they forfeited their right to challenge the circuit court's denial of their motion for judgment.

The appellants' failure to note their reasons for the motion for judgment is equally dispositive of the motion for judgment notwithstanding the verdict. Maryland Rule 2–532(a) requires that:

In a jury trial, a party may move for judgment notwithstanding the verdict only if that party made a motion for judgment at the close of all the evidence and *only on the grounds advanced in support of the earlier motion.*

(Emphasis supplied.) Where, as here, the grounds for the motion for judgment do not appear in the record, the court cannot consider the motion for a judgment N.O.V. *See, Glover v. Saunders,* 252 Md. 102 at 105, 249 A.2d 156.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANTS.

---

**8.** This case cites former Rule 552a which refers to a motion for a "directed verdict," while Rule 2–519(a), the current version of this rule, uses the term "motion for judgment." The two rules concern the same procedure.