88 Md. App. 542 (1991)
596 A.2d 93
JOHNNY ALAN MITCHELL
v.
MONTGOMERY COUNTY, MARYLAND.
No. 1722, September Term, 1990.
Court of Special Appeals of Maryland.
October 2, 1991.
Richard D. Paugh, Rockville, for appellant.
Tasha Panarites, Associate County Atty. (Joyce R. Stern, County Atty. and Joann C. Robertson, Sr. Asst. County Atty., on the brief), Rockville, for appellee.
Argued before WILNER, C.J., and ROSALYN B. BELL and HARRELL, JJ.
ROSALYN B. BELL, Judge.
This case arose out of an unfortunate occurrence on November 28, 1986, when Johnny Mitchell, appellant in this case, was struck by a Montgomery County Ride-On Bus while walking along Route 355 in Gaithersburg near the intersection of Route 355 and Appledowre Way. As a result of this accident, Mitchell suffered serious injuries, including a fractured skull. He filed suit against Montgomery County, appellee in this case, alleging negligence on the part of the bus driver. Following a trial in Montgomery County Circuit Court, a jury returned a verdict for the County. In this appeal, Mitchell contends that the trial judge erred:
 in admitting allegedly expert opinion testimony by Robert Merryman, a witness for the County, when the County failed to either designate Merryman as an expert in its responses to interrogatories or offer and qualify him as an expert witness at trial;
 in admitting evidence purportedly showing that Mitchell was under the influence of alcohol, cocaine and PCP at the time of the accident;
 in admitting, for impeachment purposes, evidence of Mitchell's 1982 conviction for theft of a golf cart;
 in not granting Mitchell's motion for a directed verdict at the close of the evidence in the case; and
 in his instructions to the jury on intoxication, contributory negligence and several other issues.
Because we agree (1) that Merryman was not designated or offered and qualified as an expert, although his testimony was in significant part expert opinion testimony on an issue vital to the outcome of the case, (2) that the probative value of Dr. Caplan's testimony on the cocaine and PCP tests was outweighed by the potential for prejudice to Mitchell, and (3) that the drug paraphernalia found on Mitchell was improperly admitted, we will reverse and remand for a new trial. For the guidance of the trial judge, in the event this case is tried again, we will also address several of Mitchell's other arguments which are likely to arise on retrial.

THE FACTS
On November 28, 1986 Mitchell was walking north on the east side of Route 355 in Gaithersburg at about 5:30 p.m. He was wearing a light or white striped, blue flannel shirt. The area where he was walking was not well illuminated, as there were no street lights in the immediate area. The only lighting in the area was at the Pizza King restaurant on the west side of Route 355, which did not project across the road to any great degree. Mitchell had come out of an apartment complex south of Appledowre Way and was hitchhiking north of that intersection. It was later revealed that Mitchell had a blood alcohol level of 0.08 and he tested positive for both cocaine and PCP in his urine. He stated that he saw a Montgomery County Ride-On Bus proceeding north on Route 355. The bus stopped at a bus stop approximately 15-20 feet south of where Mitchell was standing. Mitchell was standing on the paved portion of the road approximately three to four feet from the curb. About 14 feet from the curb was a single, solid white line, on the other side of which was a northbound travel lane. In the center of the road was a double yellow line, and on the southbound side of the road were two lanes marked similarly to the northbound lanes. At all pertinent times, the bus had its low beam lights on. As the bus pulled away from the bus stop, the right front portion of the bus struck Mitchell, knocking him to the ground and causing severe injuries. The bus driver stated he did not see Mitchell until just prior to the impact and could not avoid striking Mitchell, inferring Mitchell had darted in front of the bus.

MERRYMAN'S TESTIMONY
Mitchell argues that testimony given by County witness Robert Merryman was, in significant part, expert testimony, even though Merryman was never (1) listed as an expert by the County in its responses to interrogatories or calendar call statement, or (2) properly proffered or qualified as an expert witness at trial. Thus, Mitchell contends, the trial judge's admission of that testimony was error. We agree.
A central issue at trial was Mitchell's alleged contributory negligence. The County's theory was that, as the result of his being under the influence of alcohol, cocaine and PCP, Mitchell's faculties were so impaired that he negligently walked in, or darted into, what the County contended was a travel lane, thus barring any recovery. Mitchell, on the other hand, contended that he was standing in a shoulder[1] lane and thus was not contributorily negligent.
To establish his claim that the lane in which he was standing was a shoulder, Mitchell called two expert witnesses, Bruce Enz and Andrew Ramisch. They testified that the presence of the solid white line dividing the two northbound lanes of Route 355 indicated that the right lane was a shoulder. Both of these witnesses were properly qualified as experts.
In support of its contrary theory that the lane in which Mitchell was standing was a travel lane, the County called Theodore Hunt, a supervisor for the County Ride-On System, who testified that Route 355 northbound is a two lane road at the point where Mitchell was struck. His characterization, however, was undercut by a diagram prepared by Hunt at the time of the accident, on which he designated the right lane of northbound Route 355 as a "shoulder." At trial, Hunt sought to characterize this designation as a mistake on his part.
The County then proffered the testimony of Merryman of the Maryland Department of Transportation as a "fact witness to describe the road." Counsel for Mitchell objected to this testimony, contending that Merryman would offer expert opinion testimony, which was improper because Merryman was never designated as an expert in the County's answers to interrogatories.[2] The trial judge accepted the County's representation that Merryman was a fact witness offered to describe the roadway; thus, Merryman was never qualified as an expert. Almost as soon as Merryman's testimony began, however, Mitchell again objected that Merryman was testifying as an expert. Although he cautioned the County not to elicit expert opinion from Merryman, the trial judge overruled Mitchell's objection. Merryman then testified that Route 355 was a "major arterial highway" and "a limited access highway" and its right-hand lane was an "acceleration, deceleration lane for ingress." During this series of descriptions by Merryman, counsel for Mitchell moved to strike this testimony and moved for mistrial. Despite his recognition that Merryman's testimony was expert opinion "in part" and despite his admonitions to counsel for the County not to elicit expert opinion testimony, the trial judge overruled Mitchell's objections. Nor did he allow counsel for Mitchell to voir dire Merryman outside the presence of the jury, as counsel suggested. This failure to take any steps to alleviate the harm created by the County's failure to supplement its responses to interrogatories, and either limit Merryman's testimony to facts; or properly qualify him as an expert witness, despite continuing objections from Mitchell, was error.
Ordinarily, a trial judge is vested with discretion regarding the admissibility of an expert's opinion. Simmons v. State, 313 Md. 33, 43, 542 A.2d 1258 (1988); Globe Sec. Sys. v. Sterling, 79 Md. App. 303, 308, 556 A.2d 731 (1989). While the trial judge's rulings ordinarily will not be disturbed on appeal absent an abuse of discretion, Globe, 79 Md. App. at 308, 556 A.2d 731; Waine v. State, 37 Md. App. 222, 246, 377 A.2d 509 (1977), in this case the witness was never qualified as an expert.
Initially, the trial judge quite properly accepted the County's proffer that Merryman was a fact witness.[3] Once Merryman began to testify, however, it quickly became apparent that he was testifying, in significant part, to matters which constituted expert opinion.[4] In this case, Merryman was never designated as an expert witness by the County in its answers to interrogatories requesting such designation. Mitchell's interrogatories were properly made under Rule 2-421 and the County initially responded in an appropriate manner, listing several expert witnesses. The County, however, also had a continuing obligation to supplement its responses "promptly," Rule 2-401(c); in fact, the County did supplement its response about experts, adding an additional expert witness approximately one month prior to trial. Merryman, however, was not listed in this or any other response filed by the County.
The duty to supplement answers to interrogatories in this respect is clear:
"Answers to interrogatories are useful to preclude use of information not disclosed in them. If a party discloses one expert in answers to interrogatories and tries to use another at trial without having supplemented under Rule 2-401(c), that party will probably not be entitled to use the undisclosed witness unless the court makes some other adjustment in fairness to the objecting party."
Niemeyer and Richard, Maryland Rules Commentary 228 (1984).
No such "adjustment" was made by the trial judge in this case. While he need not have excluded Merryman's testimony altogether,[5] once the County had, in fact, elicited expert testimony from Merryman, the very least the trial judge should have done was make some "adjustment" in order to provide Mitchell's counsel with an opportunity to examine Merryman's qualifications to offer testimony in the form of expert opinion. See Baltimore Transit Co. v. Mezzanotti, 227 Md. 8, 13, 174 A.2d 768 (1961) (fundamental objective of discovery rules is to avoid parties going to trial in a "confused and muddled state of mind").
More importantly, Merryman was never qualified as an expert witness at trial, primarily because the County proffered him as a fact witness. "Before a witness may be asked a question which calls for expert testimony, the witness' qualifications must be proved and the witness proffered to the court and accepted by it as an expert in the relevant field." McLain, Maryland Evidence § 702.2 (1987). Furthermore, and despite the protestations of appellee, both here and at trial, we hold that key portions of Merryman's testimony were not based, as proffered by the County, on his observations of the road. "The rule in Maryland is that a lay witness is not qualified to express an opinion about matters which are either within the scope of common knowledge and experience of the jury or which are peculiarly within the specialized knowledge of experts." King v. State, 36 Md. App. 124, 135, 373 A.2d 292, cert. denied 281 Md. 740 (1977).[6] Terms such as "major arterial highway," "limited access," and "acceleration, deceleration lane for ingress" are, by their very nature, technical terms about which the average layman cannot testify based on his or her own perceptions and experiences. Merryman, by his own testimony, based his conclusions about the "proper" use of the road on his "25 years experience with the Maryland DOT." Clearly, Merryman was not, as proffered by the County and asserted on appeal, solely a "fact witness to describe this road." Once the trial judge recognized that Merryman had, in fact, testified as to an expert opinion, he should have insisted that the County establish Merryman's professional qualifications.[7]
The County contends that any error in admission of Merryman's testimony was harmless. We do not agree.
"[T]he appellate courts of this State will not reverse a lower court judgment for harmless error: the complaining party must show prejudice as well as error." Harris v. Harris, 310 Md. 310, 319, 529 A.2d 356 (1987) (emphasis in original). Prejudice results from error that affects the outcome of the case. State Roads Comm'n v. Kuenne, 240 Md. 232, 235, 213 A.2d 567 (1965).
In this case, Merryman's testimony was central to both Mitchell's theory of primary negligence and the County's affirmative defense that Mitchell was contributorily negligent. If Mitchell was standing in a "shoulder" lane, then the bus driver had a greater duty of care to watch out for pedestrians than Mitchell did for moving vehicles. If, on the other hand, Mitchell was standing in a "travel" lane, this constituted contributory negligence, thus barring Mitchell from any recovery. Merryman's testimony thus simultaneously both damaged Mitchell's theory of the case and bolstered the County's affirmative defense of contributory negligence.
The context in which Merryman testified supports this view of the case. As stated earlier, prior to Merryman's testimony, two of Mitchell's expert witnesses (Enz and Ramisch) and one of the County's lay witnesses (Hunt), all testified that they believed that Mitchell had been standing in a shoulder rather than a travel lane. Merryman's testimony, immediately following these three witnesses, was obviously intended to rebut this notion in the minds of the jury. This error was not harmless.

INTOXICATION AND DRUG EVIDENCE
At trial, the County introduced into evidence hospital reports which the County claimed showed that Mitchell was under the influence of alcohol, cocaine and PCP. To explain the effects of these drugs on Mitchell, the County introduced the testimony of Dr. Yale Caplan, an expert witness. Finally, the County also introduced into evidence a "bong," or water pipe, found on Mitchell following the accident. All of this evidence was offered to bolster the County's contention that Mitchell's actions constituted contributory negligence. On appeal, Mitchell contends that the trial judge's admission of this evidence was error. His argument is on two levels: a general assault on the relevance of any evidence of intoxication, and specific attacks on different aspects of the County's evidence. While we do not agree with his general argument, we do agree that Dr. Caplan's testimony about the positive cocaine and PCP tests, the records of those tests and the bong should have been excluded from evidence.
Mitchell first contends that the evidence of his intoxication and drug use was irrelevant as a matter of law. We do not agree.
Properly characterized, the legal issue here is not intoxication itself, but intoxication as a factor that may have led to contributory negligence:
"To be contributorily negligent, a plaintiff must either perform or fail to perform an act which is a proximate cause of the particular injury of which he complains. His conduct is judged by a norm of ordinary care and the failure by a plaintiff to meet this standard constitutes contributory negligence barring his recovery."
Schwarz v. Hathaway, 82 Md. App. 87, 90, 570 A.2d 348 (1990), quoting Hooper v. Mougin, 263 Md. 630, 633, 284 A.2d 236 (1971) (emphasis added). Intoxication, by itself, is not sufficient, as a matter of law, to constitute the act necessary to show such causation. Quinn Freight Lines v. Woods, 266 Md. 381, 389, 292 A.2d 669 (1972). While evidence of intoxication does not, as a matter of law, constitute negligence per se, such evidence may be admissible to help prove negligence. Evidence of intoxication frequently is part of a causal chain which, if believed by the trier of fact, might well result in contributory negligence. This is not to say that evidence that a plaintiff or defendant in a negligence case is intoxicated is automatically admissible regardless of the circumstances of the case. As counsel for Mitchell pointed out repeatedly at trial and as he contends on appeal,[8] what is at issue is not intoxication itself, but intoxication as leading to some action or failure to act which is negligent.[9] What is required, therefore, in order for evidence of intoxication to be admissible is for the proponent of the evidence to demonstrate some causal connection between the allegedly intoxicated state of the person in question and his or her conduct or behavior.[10] Contrary to Mitchell's counsel's assertions, the evidence in this case more than adequately supported an inference that Mitchell's intoxicated state may have contributed to his being in a place where he should not have been (e.g., what the County sought to establish as a travel lane of Route 355), or that it caused him to walk or dart into the path of the bus. If the evidence of intoxication made it more likely that he committed the acts suggested and thus was contributorily negligent, such evidence is both probative and relevant.

 Dr. Caplan's Testimony 
In addition to Mitchell's general objections to the admission of evidence showing that he tested positive for alcohol, cocaine and PCP, he also objected specifically to the testimony of Dr. Yale Caplan, an expert witness called by the County. Mitchell argues that, because Dr. Caplan was not able to state, with a reasonable degree of medical certainty, whether Mitchell was in fact under the influence of alcohol, cocaine and/or PCP at the time of the accident, his testimony should have been excluded as irrelevant and prejudicial. We agree with Mitchell that the cocaine and PCP evidence should have been excluded. We hold, however, that Dr. Caplan's testimony with respect to Mitchell's alcohol intoxication established sufficient relevance to the issue of contributory negligence and therefore was properly admitted.
At trial, Dr. Caplan, the Chief Toxicologist for the State Medical Examiners Office, testified for the County. He was qualified as an expert in forensic toxicology. Although Dr. Caplan never actually examined Mitchell, he reviewed the medical records of Suburban Hospital, where the alcohol and drug tests were performed. When asked what effect Mitchell's blood alcohol level would have, he testified that a 0.08 blood alcohol level "would have significant effects on all individuals. Therefore, if you pick any one individual you would expect effects in that individual." He further testified that, because Mitchell's blood alcohol test was performed about one hour after the accident, his blood alcohol level at the time of the accident was likely between 0.09 and 0.10. As a result, it was Dr. Caplan's opinion that Mitchell was "significantly intoxicated" at the time of the accident.
While the evidence relating to impairment by alcohol was not strong, Dr. Caplan theorized that because Mitchell's blood alcohol level was 0.08 at the time of the test, it likely was between 0.09 and 0.10 at the time of the accident. He further opined that Mitchell was "significantly intoxicated." Dr. Caplan described the effects of such intoxication as including problems with coordination, length of reaction time, blurred and double vision, lack of peripheral and side visions, problems with depth perception, and lack of ability to "generally comprehend and make decisions and perform tasks." Because at least some possibility of a causal link between Mitchell's blood alcohol level and his actions was thus established by Dr. Caplan's testimony, this testimony was properly admitted.
The same cannot be said of Dr. Caplan's testimony about the positive cocaine and PCP tests. With respect to Mitchell's cocaine test results, Dr. Caplan stated that, although the effects of cocaine usually last less than an hour, it can remain in the urine for up to three days. He acknowledged that it was "possible" that Mitchell had used cocaine up to three days before the accident and thus was not under the influence of cocaine at the time of the accident. When the issue of PCP was raised, Dr. Caplan testified that, although the effects of PCP last no more than three or four hours, it can remain in the urine for up to a week. As with the cocaine, Dr. Caplan stated that it was "possible" that Mitchell used PCP up to one week prior to the accident, and thus may not have been under the influence of PCP when the accident occurred. He also testified that latent, or "flashback," effects of PCP may sometimes occur days or even weeks after an initial dose. He did not say, however, what the probability of such flashback effects is, or whether Mitchell himself was likely to experience them. Most importantly, Dr. Caplan was unable to state, with a reasonable degree of medical certainty, whether Mitchell was under the influence of PCP at the time of the accident.[11] In light of this testimony, both Dr. Caplan's testimony and the evidence of the positive cocaine and PCP tests themselves should have been excluded.[12]
To be material, and thus admissible, evidence must first be relevant; that is, it must tend to establish a proposition that has legal significance in the case. Paige v. Manuzak, 57 Md. App. 621, 632, 471 A.2d 758, cert. denied 300 Md. 154, 476 A.2d 722 (1984); Huber v. State, 2 Md. App. 245, 261-262, 234 A.2d 264 (1967). In determining the admissibility of evidence, the test "is whether the probativeness of the evidence outweighs its potential for prejudice." Troja v. Black & Decker Mfg. Co., 62 Md. App. 101, 114, 488 A.2d 516, cert. denied 303 Md. 471, 494 A.2d 939 (1985).
In this case, Dr. Caplan never testified that it was likely, probable or even possible that Mitchell was under the influence of cocaine or PCP at the time of the accident. The only certain testimony that he offered was what the effects of these drugs would have been on someone who had in fact used them. As such, his testimony in this respect had little or no probative value as to the critical question: was Mitchell impaired to such a degree that his actions constituted contributory negligence? Dr. Caplan could not state that Mitchell was impaired by cocaine or PCP. Thus, whatever marginal probative value his testimony with respect to these drugs might have had was more than outweighed by the substantial prejudice resulting from the jury's having heard that Mitchell had at some point used both cocaine and PCP. The tenuous causal link made by Dr. Caplan between the positive drug test and the accident may have led the jury to mistake the relevance of the drug evidence and find against Mitchell solely because he had been associated with illegal drugs. As such, Dr. Caplan's testimony with respect to cocaine and PCP should have been excluded. On retrial, both Dr. Caplan's testimony and the evidence of the drug tests themselves should be excluded unless the County can produce additional evidence showing some probability that Mitchell was under the influence of these drugs at the time of the accident.

 The Drug Paraphernalia 
Mitchell next contends that the trial judge erred in admitting into evidence a "bong," or water pipe, that was recovered from Mitchell following the accident. At oral argument, the County conceded that the admissibility of the bong hinged on the admissibility of the cocaine and PCP evidence. While that is true, the statement is incomplete. Possession of drug paraphernalia, absent evidence that it had been recently used, would have little if any probative value in this case, regardless of whether the drug test was admissible. Our disposition of the cocaine and PCP issue, however, obviates the question about the bong. On retrial, even if the County is able to establish a causal link between Mitchell's positive drug test and his actions at the time of the accident, the bong should be excluded from evidence unless some further evidence is adduced which makes it relevant.

MITCHELL'S CRIMINAL RECORD
Mitchell also contends that the trial court abused its discretion in admitting evidence of his conviction for theft in 1982. We do not agree. The trial judge's ruling was correct; in fact, it would have been an abuse of discretion to exclude the proffered evidence. Maryland Cts. & Jud.Proc.Code Ann. § 10-905 (1974, 1989 Repl.Vol.), makes evidence of a conviction of an "infamous crime" admissible against a witness or party to cast doubt on that person's truth and veracity. This statute "deprives the trial court of discretion to determine the admissibility of infamous crimes by making infamous crimes automatically admissible for impeachment purposes." Wicks v. State, 311 Md. 376, 379, 535 A.2d 459 (1988); see Cousins v. State, 230 Md. 2, 4-5, 185 A.2d 488 (1962) ("where the prior conviction was for an infamous crime, evidence of it is admissible without reference to the time of its commission, for such bearing and weight on credibility as the trier of fact may give it under the circumstances."). In Wicks, a 35-year-old petit larceny conviction was held automatically admissible as an infamous crime. Wicks, 311 Md. at 379, 535 A.2d 459. The trial judge's ruling was entirely correct.

DIRECTED VERDICT
Following the close of the evidence in this case, Mitchell moved for judgment on the issue of contributory negligence, citing Schwarz, 82 Md. App. at 87, 570 A.2d 348. The trial judge expressed some doubts about the validity of the motion, but reserved judgment until the following day. The trial judge never mentioned the motion again and counsel for Mitchell failed to renew it. This issue, therefore, has been waived. Rule 8-131(a). Even if it had been properly preserved, we would find that Mitchell's argument is without merit.
In Schwarz, the evidence was uncontroverted that plaintiff's decedent was straddling a motorcycle in the shoulder lane of an interstate highway when he was struck by a truck. Because there was no evidence that the decedent was standing in a travel portion of the road, this Court reversed a judgment for defendant, holding that the issue of contributory negligence should not have been submitted to the jury on the facts presented. Schwarz, 82 Md. App. at 96, 570 A.2d 348. There were no such uncontroverted facts in the instant case. On the contrary, perhaps the most bitterly disputed aspect of the case was the very fact uncontroverted in Schwarz: whether the lane in which Mitchell was standing was a shoulder or a travel lane. The trial judge made no legal determination as to the proper designation of this lane; he left it as a factual matter for the jury to decide. Under these circumstances a grant of Mitchell's motion for judgment would have been manifestly inappropriate.

INSTRUCTIONS TO THE JURY
Two of the trial judge's challenged decisions on instructions closely mirror his evidentiary decisions. We have already held that the trial judge correctly decided to admit evidence dealing with Mitchell's intoxication by alcohol, but erroneously admitted the cocaine, PCP and bong evidence. See Intoxication and Drug Evidence, supra. To the extent his instructions dealt only with alcohol, they were proper.[13] The trial judge also correctly declined to grant Mitchell's motion for judgment on the Schwarz issue, discussed at Directed Verdict, supra. His rejection of Mitchell's proffered instruction on this issue was also proper.
With respect to the trial judge's other instructions to which Mitchell objected, each instruction was an accurate statement of the law and was supported by the evidence. "When giving instructions to a jury, the trial judge must insure that the instructions fairly and accurately set forth the law applicable to the case, and that the instructions are supported by testimony or evidence presented during the case." Odenton Dev. Co. v. Lamy, 320 Md. 33, 43, 575 A.2d 1235 (1990).

 Assumption of Risk 
Mitchell first objects to the judge's assumption of risk instruction, asserting that there was no evidence to suggest that Mitchell assumed the risk. We do not agree.
In McQuiggan v. Boy Scouts of America, 73 Md. App. 705, 709-710, 536 A.2d 137 (1988), quoting Gilbert, Maryland Tort Law Handbook § 11.6 (1986), this Court stated:
"A plaintiff is said to have assumed the risk of injury when with full knowledge and understanding of an obvious danger, he/she exposes himself or herself to that particular danger, thus voluntarily abandoning his/her right to complain."
Assuming that the jury could find that Mitchell was in a travel lane, the facts of the case would support the judge's giving of an assumption of risk instruction.

 Mere Accident 
Mitchell next contends that the trial judge's mere accident instruction in this case was improper, and cites Ristaino v. Flannery, 76 Md. App. 662, 547 A.2d 1115 (1988), vacated and remanded, 317 Md. 452, 564 A.2d 790 (1989), to support this argument. Mitchell contends that Ristaino held the giving of a mere accident instruction to be error where it may confuse or mislead the jury. This is a seriously flawed reading of the Ristaino holding. The Court of Appeals held that it was error to give both a mere accident and presumption of negligence instruction, even though both were independently proper on the evidence, because in combination they tended to confuse and mislead the jury. This Court specifically held in Ristaino that a mere accident instruction, if supported by the evidence, is proper. Ristaino, 76 Md. App. at 671 n. 7, 547 A.2d 1115. This aspect of our holding was not disturbed by the Court of Appeals' reversal.
There was more than sufficient evidence to support this instruction in the instant case. To cite but one example, the bus driver testified that he was driving properly, had his headlights on and was watching the road, but that Mitchell suddenly appeared in front of the bus. These facts, if believed, give rise to an inference of a mere accident.[14]

 Pedestrian's Use of a Crosswalk 
Mitchell also contends that the trial judge's instruction on a pedestrian's failure to use a crosswalk was error, because it was not supported by the facts of the case, and was thus confusing and misleading to the jury. We do not agree. On the contrary, Mitchell himself testified that he had already crossed the road once while hitchhiking, and that he was standing on the paved portion of the road when he was struck by the bus. These facts suggest at least an inference that Mitchell may have been crossing the road again when he was struck.

 Pedestrian's Soliciting a Ride 
Mitchell contends that the trial court's instruction on a pedestrian's solicitation of a ride was not supported by the facts of this case. This assertion belies Mitchell's own testimony that he was hitchhiking prior to being struck by the bus.

 Sudden or Real Emergency 
Mitchell also argues that there were no facts in this case to support the trial judge's "sudden and real emergency" instruction. Again, we do not agree. The bus driver in his testimony repeatedly stated his belief that Mitchell appeared in front of the bus suddenly and without warning. While there was conflicting evidence on this point, there was sufficient evidence of a sudden and real emergency to warrant the trial judge's instructions on this point.

 Duties of Motorist and Pedestrian 
Mitchell proffered an instruction in the form of a quotation from Cohen v. Rubin, 55 Md. App. 83, 93, 460 A.2d 1046 (1983).[15] While the proffered instruction was specifically upheld in Cohen, there is no obligation on the part of the trial judge to give a particular instruction if the instructions actually given fairly cover the issues raised in the proffered instruction. Rule 2-520(c); Eagle-Picher Indus. v. Balbos, 84 Md. App. 10, 43, 578 A.2d 228 (1990), cert. granted, 322 Md. 737, 589 A.2d 968 (1991). The trial judge's other instructions fairly covered the points raised by Mitchell in the proffered instruction.
On this same issue, Mitchell proffered an instruction based on language in Whitt v. Dynan, 20 Md. App. 148, 161, 315 A.2d 122 (1974).[16]Whitt, however, does not address the respective rights and duties of motorists and pedestrians, as asserted by Mitchell, but rather addresses whether violation of the statute requiring pedestrians to walk facing traffic is negligence as a matter of law. As such, it is inapposite to this case, where no such ruling was made or even considered.

 Effect of Witness' Testimony 
Finally, Mitchell proffered an instruction on the effect to be given the bus driver's testimony, quoting McSlarrow v. Walker, 56 Md. App. 151, 160, 467 A.2d 196 (1983):
"Where a witness testified that he looked and listened, but did not see or hear a certain object, which, if he had actually looked and listened, he must necessarily have seen and heard, his testimony is not worthy of consideration."
As worded, this instruction was properly rejected, because it could be deemed to direct the jury to disregard the bus driver's testimony in its entirety, if they found he would have seen Mitchell had he looked. Nevertheless, this proffered instruction, even if taken out of context, was directed at an issue not covered by the trial judge's instructions; namely, the effect of the jury's possible conclusion that the bus driver could have or should have seen Mitchell in enough time to have avoided the collision. Mitchell's accident reconstruction expert testified that the driver should have seen Mitchell, while the bus driver and a neutral witness, Karen Lund, testified that the driver could not have seen Mitchell prior to the impact. Although this was a point for Mitchell's counsel to argue and the jury to decide, Mitchell was entitled to an instruction from which to base his argument that the bus driver was negligent. The proffered instruction, while grossly overstated and taken out of context, did suggest the issue. Although arguably Mitchell failed to preserve this issue,[17] our resolution of the case on other grounds eliminates any need to address this issue more directly, particularly since neither party briefed these precise points.
As a general matter, we also note that several of Mitchell's proposed instructions consisted of quotes of law from cases. While correct as statements of law, these excerpts do not necessarily constitute proper jury instructions. "The reasoning of courts in opinions is not addressed to juries and is not always adapted to use in instructions to them." Flohr v. Coleman, 245 Md. 254, 262, 225 A.2d 868 (1966).
JUDGMENT REVERSED.
CASE REMANDED FOR A NEW TRIAL.
COSTS TO BE PAID BY APPELLEE.
NOTES
[1] Maryland Transp.Code Ann. § 21-101(m) (1977, 1984 Repl.Vol.), defines shoulder as "that portion of a highway contiguous with the roadway for the accommodation of stopped vehicles for emergency use, and for the lateral support of the base and surface courses of the roadway."
[2] Merryman was not listed as a witness of any kind by the County until August 29, 1990, only 12 days before trial, when he was listed as a fact witness in the County's updated calendar call statement.
[3] This proffer is somewhat suspect, however, in light of (1) Merryman's professional qualifications (he had worked for the Maryland Department of Transportation for 25 years); (2) the nature of the questions put to him by counsel for the County (e.g., "Is there a particular designation for this kind of highway?", "Was that a lane for vehicles to use?"); and (3) the context in which Merryman testified (immediately following three witnesses, two for Mitchell and one for the County, all of whom had at one time considered the lane in question to be a shoulder).
[4] The trial judge himself correctly recognized the distinction between fact and opinion testimony. In cautioning counsel for the County to keep Merryman's testimony within the realm of description and not opinion, he stated:

"Describing it means this is what it looks like, this is how wide it is, this is what it is covered with, this is how it is marked, these are the colors of the markings."
Later during Merryman's testimony, the trial judge stated:
"If he is a lay witness, he can come up and testify about what he has seen, what he heard, what he tasted, what he smelled, and what he did do. The answer that you are trying to elicit from this witness has absolutely nothing to do with what he said, heard, did or saw."
These characterizations of the distinction between lay and expert testimony were entirely correct. Although the trial judge later recognized that Merryman's testimony consisted of expert opinion "in part," he never took any action to cure the harm which resulted from the jury's having heard improper, unqualified expert opinion testimony.
[5] Rule 2-433(a) sets forth several possible sanctions for failure to comply with discovery requests, including treating facts sought to be discovered as established, barring the failing party from supporting or opposing claims or defenses, barring that party from introducing certain matters in evidence, and even the ultimate sanction, dismissing the action or entering a default judgment. "A trial judge is vested with a large measure of discretion in applying sanctions for failure to adhere to the discovery rules." Snyder v. Snyder, 79 Md. App. 448, 460-461, 558 A.2d 412, cert. denied 317 Md. 511, 564 A.2d 1182 (1989), quoting Starfish Condominium Ass'n v. Yorkridge Serv. Corp., 295 Md. 693, 712, 458 A.2d 805 (1983).
[6] Had counsel for the County kept Merryman's testimony to her proffer, i.e., how the road was actually used (as distinct from its designation or proper use), this might well be a different case. The failure to keep to the proffer deepens the suspicion with which Merryman's testimony must be viewed. Any witness could have testified to how the road was actually used, including the bus driver. Merryman, however, provided a cloak of "expertise" without the trouble or the formalities of qualification.
[7] We are fully cognizant of the dilemma in which the trial judge found himself at this point. Because the County failed to list Merryman as an expert, both the County and the trial judge were loath to characterize Merryman's testimony as expert opinion; had they done so, the trial judge would have had to deal with Mitchell's counsel's complaints more directly. Even by acknowledging the County's failure to comply with discovery, however, the trial judge was not required to exclude Merryman's testimony altogether. See Note 5. On the other hand, doing nothing was not the answer, either.
[8] On appeal, Mitchell cites Hardiman v. Dyson, 194 Va. 116, 72 S.E.2d 361 (1952) and Lynch v. Clark, 183 Or. 431, 194 P.2d 416 (1948) for the proposition that intoxication, in and of itself, is not sufficient to establish contributory negligence, in the absence of some outward manifestation of negligent conduct. With respect to the Hardiman case, we do not see where it proves the point Mitchell seeks to make. Hardiman stands for the proposition that the applicable standard of care does not change because the person in question is voluntarily intoxicated. While we have no quarrel with the reasoning of the Lynch case, it is inapposite to this case, where there was sufficient evidence to support a connection between Mitchell's allegedly intoxicated state and his conduct.
[9] While no Maryland cases have addressed this issue directly, we have found at least one case, indistinguishable from this case factually, in which the exclusion of evidence of intoxication was held reversible error. Kuzmiak v. Flowers, 580 S.W.2d 226, 227 (Ky. 1979).
[10] The analogy made by Mitchell's counsel in his motion in limine at trial provides a good example of a situation in which evidence of intoxication would not be admissible. "Your Honor, if the man is intoxicated  take another scenario, suppose he is standing in a field and he is intoxicated, and a bus hits him?" In such a case, evidence of intoxication would almost certainly be inadmissible to prove contributory negligence. As the trial judge correctly pointed out, in denying Mitchell's motion, however, "there is a difference between the main road and the shoulder and a field."
[11] With respect to both cocaine and PCP, Dr. Caplan testified that, as far as he knew, no blood test for cocaine or PCP had been done on Mitchell at Suburban Hospital; the only record was of a urine test. Dr. Caplan acknowledged, however, that (1) a blood test would have established more thoroughly when Mitchell had used cocaine and/or PCP (because drugs may be in the urine well after they leave the blood); and (2) that a blood test for cocaine and PCP may have been done on Mitchell, but that negative test results are often not reported. This gap in the evidence had other consequences as well. With respect to both cocaine and PCP, Dr. Caplan testified that he would "expect" the effects of these drugs to be "additive" to the effects of the alcohol, although he conceded that without a blood test he could not quantify that effect on Mitchell. On retrial, the County might make some effort to establish whether in this case a blood test was in fact conducted.
[12] Because we hold that the evidence of Mitchell's alcohol intoxication was properly admitted, the hospital records themselves would be properly admissible on retrial, so long as the references to the positive cocaine and PCP tests are redacted where necessary.
[13] On these issues, the trial judge instructed the jury:

Also the mere fact that the Plaintiff in this case had in his system alcohol or drugs does not necessarily as a matter of law mean that he was contributorily negligent.
Because we have held that the evidence dealing with "drugs," cocaine and PCP, was erroneously admitted, this instruction was also erroneous. With respect to alcohol, this instruction was proper. The trial judge made no specific reference to the bong in his instructions.
[14] This is not to state that there was no conflicting evidence to refute the bus driver's testimony. Mitchell's witnesses, particularly the accident reconstruction expert, Bruce Enz, directly contradicted the driver's testimony that he could not have seen Mitchell before the impact. Resolution of these conflicts in testimony, however, was for the jury, not for the trial judge in his instructions.
[15] Mitchell proffered the following instruction:

"The driver of a motor vehicle is required to exercise much greater vigilance and caution to look out for the pedestrian than the pedestrian is required to exercise to look out for the driver. This is because of the fact that the pedestrian can not usually harm the motorist by the way he uses the street and needs to look only after his own safety, whereas the motorist may kill or seriously injure the pedestrian and therefore should look out for the safety of the pedestrian as well as his own.
"A motorist, when approaching a street intersection, must exercise much greater vigilance than when he is driving between intersections."
[16] Mitchell proffered the following instruction:

"Where no sidewalks exist the motorist has at all times a duty to anticipate the presence of pedestrians on his right as well as a duty to avoid striking pedestrians on his right. The motorist's ability to carry out these duties by looking for pedestrians and avoiding them by moving out of the way is not affected by whether the pedestrian is facing the motorist or has his back to him.
"The requirement that a pedestrian walk along the left side of the highway facing traffic is not primarily concerned with the relative rights of pedestrians and motorists to use the highway. It is not designed to vary the obligation of the motorist toward the pedestrian depending on the side of the highway on which the pedestrian is walking or the direction in which he is facing. It follows that where no sidewalks exist the motorist has at all times a duty to anticipate the presence of pedestrians."
[17] Cf. Collins v. State, 318 Md. 269, 290, 568 A.2d 1, cert. denied ___ U.S. ___, 110 S.Ct. 3296, 111 L.Ed.2d 805 (1990) (not error for a trial judge to refuse to grant a requested jury instruction that is "potentially misleading"); but cf. Privette v. State, 320 Md. 738, 748, 580 A.2d 188 (1990) (where a requested jury instruction is "technically erroneous," failure by the trial judge to include a correct instruction is error). Because of our disposition of this case, we express no opinion on the applicability of the rule in Privette to civil cases, nor on whether Mitchell's instruction was either "potentially misleading" or "technically erroneous."